# EXHIBIT A

**FORMS SCHEDULE**

**Named Insured:**   MCKESSON CORPORATION

**Policy Number:**   5443284
**Effective 12:01 AM:**   July 1, 2008

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | UMB PRIME DEC | 80518 | (10/04) |
| | UMB PRIME JACKET | 80517 | (05/06) |
| | SCHEDULE OF UNDERLYING | UNDSCH | (05/99) |
| | POLICYHOLDER DISC - NOTICE OF TERRORISM INS COVG | 96556 | (01/08) |
| 1 | RETAINED LIMIT AMENDATORY ENDORSEMENT | MNSCPT | (06/08) |
| 2 | EMPLOYEE BENEFITS LIAB LIMIT (CM) | 83073 | (09/03) |
| 3 | NON-CONCURRENCY END'T | 81581 | (02/03) |
| 4 | SIR APP TO SPEC.COV.AFTR. UNDER. LMT.ARE RED.OR EX | 87233 | (12/04) |
| 5 | AMEND.OF VARIOUS PER.INJ.AND ADV.INJ.EXCL.END.AMEN | 89452 | (06/05) |
| 6 | NAMED PERIL AND TIME ELEMENT POLL. SIR END. PCOH V | 89470 | (06/05) |
| 7 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 8 | INDUSTRIAL AID AIRCRAFT LIMITATION ENDORSEMENT | 81912 | (05/06) |
| 9 | EMP.LIAB.STOP-GAPLMT.ENDT | 82616 | (05/06) |
| 10 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDORSEMENT | 94621 | (05/07) |
| 11 | SPECIFIED PRODUCTS EXCL | 83097 | (09/03) |
| 12 | CA. CANCEL AND NONRENEWAL AMEND. ENDT. | 81589 | (10/04) |
| 13 | DUTIES IN THE EVENT OF AN OCC. CLAIM OR SUIT | 86456 | (08/04) |
| 14 | LIMITS. OF INS. AMEND. ENDT. DEL. OF PARA. E. | 86460 | (08/04) |
| 15 | NOTICE OF OCCURRENCE | 80454 | (07/02) |
| 16 | FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT | 80432 | (07/02) |
| 17 | DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUI | 83687 | (09/07) |
| 18 | THIRD PARTY DISCRIMINATION COVERAGE ENDORSEMENT | 80494 | (07/02) |
| 19 | ARBITRATION COND END (EXCL Q, DOMICILE ST.) | 82425 | (06/03) |
| 20 | ADDITIONAL NAMED INSURED | MNSCPT | (07/08) |
| 21 | NEW ACQUISITIONS ENDORSEMENT | MNSCPT | (06/08) |
| 22 | AMENDMENT OF CONDITION D, CANCELLLATION CLAUSE | MNSCPT | (06/08) |
| 23 | INCIDENTAL MEDICAL MALPRACTIVE ENDORSEMENT | MNSCPT | (06/08) |
| 24 | JOINT VENTURE - SCALE / SCALE WITH FINAL ADJ | MNSCPT | (06/08) |
| 25 | MANUFACTURE OF DRUGS EXCLUSION | MNSCPT | (06/08) |
| 26 | KNOWLEDGE OF OCCURRENCE | MNSCPT | (06/08) |
| 27 | UNINSURED/UNDERINSURED MOTORIST COVERAGE END | 82610 | (02/07) |

**AIG** AMERICAN INTERNATIONAL COMPANIES®

## Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

### DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | |
|---|---|
| ☐ AIG Casualty Company | ☐ Granite State Insurance Company |
| ☐ AIU Insurance Company | ☐ Illinois National Insurance Company |
| ☐ American Home Assurance Company | ☐ National Union Fire Insurance Company of Louisiana |
| ☐ American International Pacific Insurance Company | ☒ National Union Fire Insurance Company of Pittsburgh, Pa. |
| ☐ American International South Insurance Company | ☐ New Hampshire Insurance Company |
| ☐ Commerce & Industry Insurance Company | ☐ The Insurance Company of the State of Pennsylvania |

(each of the above being a capital stock company)

**Executive Offices: 70 Pine Street, New York, NY 10270**
**Telephone No. 212-770-7000**

---

**POLICY NUMBER:**     5443284          **RENEWAL OF:**     9835034

**ITEM 1. NAMED INSURED:**     MCKESSON CORPORATION

**MAILING ADDRESS:**     1 POST ST STE 3275
SAN FRANCISCO, CA 94104

**ITEM 2. POLICY PERIOD: FROM:**  July 1, 2008          **TO:**  July 1, 2009
(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)

**ITEM 3. LIMITS OF INSURANCE**

The Limits of Insurance, subject to the terms of this policy, are:

A. $45,000,000     **Each Occurrence**
B. $45,000,000     **General Aggregate** (in accordance with Section IV. Limits of Insurance)
C. $45,000,000     **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)
D. $250,000     **CrisisResponse Sublimit of Insurance**
E. $50,000     **Excess Casualty CrisisFund Limit of Insurance**

**ITEM 4. SCHEDULED UNDERLYING INSURANCE -**

**ITEM 5. SELF-INSURED RETENTION -**  $25,000          **Each Occurrence**

**ITEM 6. PREMIUM AND PREMIUM COMPUTATION**

| | |
|---|---|
| ESTIMATED TOTAL ANNUAL EXPOSURE | N/A |
| RATES PER | FLAT |
| MINIMUM PREMIUM | $992,000.00 |
| ADVANCE PREMIUM | $992,000.00 |

**ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE**

**PRODUCER NAME:**  MARSH USA, INC.
**ADDRESS:**     ONE CALIFORNIA STREET
SAN FRANCISCO, CA 94111

_[signature]_

Authorized Representative or          Date
Countersignature (Where Applicable)

80518 (10/04)
AH0876          *Archive Copy*          **Issue Date:**  07/10/08

# Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy.  The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning.  See Section VII. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

| I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY |
|---|

A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B. This policy applies, only if:

1. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C. 1. This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part.  If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage**  during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

2. **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D. **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1. reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2. receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

E. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

---

## II. INSURING AGREEMENT-CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

A. **CrisisResponse**

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B. **Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C. A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D. There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E. Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

---

## III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

80517 (5/06)
AH2007

Page 2 of 24

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 4 of 86

B.  We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

1.  investigate, negotiate and settle the **Suit** as we deem expedient; and

2.  pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

    a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    b.  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    c.  all court costs taxed against the **Insured** in the **Suit**;

    d.  pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

    e.  post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    f.  the **Insured's** expenses incurred at our request or with our consent.

D.  Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

E.  We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

## IV.  LIMITS OF INSURANCE

A.  The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

1.  **Insureds**;

2.  claims made or **Suits** brought;

3.  persons or organizations making claims or bringing **Suits**; or

4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

1.  damages included within the **Products-Completed Operations Hazard**; and

2.  damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C.  The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E.  Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F.  This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

   1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

   2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

   1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

   2.  in the event of exhaustion, continue in force as underlying insurance.

H.  Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy.  Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I.  The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**.  This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J.  The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K.  We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M.  We will not make any payment under this policy unless and until:

   1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss**; or

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

---

## V.  EXCLUSIONS

### A.  Aircraft and Watercraft

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft  that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that  is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

### B.  Asbestos

This insurance does not apply to any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### C.  Contractual Liability

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

b.  such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

**D.  Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.  a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**E.  Damage to Property**

This insurance does not apply to **Property Damage** to:

1.  property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3.  property loaned to you;

4.  personal property in the care, custody or control of the **Insured**;

5.  that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6.  that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

**F.  Damage to Your Product**

This insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

**G.  Damage to Your Work**

This insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H.  Electronic Chatrooms or Bulletin Boards and Electronic Data**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.  Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I.  **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**:

1.  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.  to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4.  arising out of his or her providing or failing to provide professional health care services.

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury** or **Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance**. Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

J.  **Employment Practices**

This insurance does not apply to any liability arising out of:

1.  failure to hire any prospective employee or any applicant for employment;

2.  dismissal, discharge or termination of any employee;

3.  failure to promote or advance any employee; or

4.  employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

   a.  coercion, harassment, humiliation or discrimination;
   b.  demotion, evaluation, reassignment, discipline, or retaliation;
   c.  libel, slander, humiliation, defamation, or invasion of privacy; or
   d.  violation of civil rights.

This exclusion applies:

1.  whether the **Insured** may be liable as an employer or in any other capacity; and

2.  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

K.  **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**.  However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L.  **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M.  **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

N.  **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1.  advertising, broadcasting, publishing or telecasting;

2.  designing or determining content of web-sites for others; or

3.  an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1., U2. and U3. of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O.  **"No-Fault, " "Uninsured Motorist" or "Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P.  **Nuclear Liability**

This insurance does not apply to:

1.  any liability:

a.  with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.  for **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

   i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

   ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

2.  As used in this exclusion:

   a.  "hazardous properties" includes radioactive, toxic or explosive properties;

   b.  "nuclear material" means source material, special nuclear material or by-product material;

   c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto ;

   d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   f.  "nuclear facility" means:

      i)   any nuclear reactor;

      ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

      iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

      iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

   includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g. "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h. **Property Damage** includes all forms of radioactive contamination of property.

## Q. Pollution

This insurance does not apply to:

1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However,  Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

### 1) Products-Completed Operations Hazard

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

### 2) Hostile Fire

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

### 3) Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations

Paragraph 1. of this exclusion does not apply to:

a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

### 4) Fuels, Lubricants and Other Operating Fluids - Mobile Equipment

Paragraph 1. of this exclusion does not apply to:

80517 (5/06)
AH2007

Page 10 of 24

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 12 of 86

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product**;

2. **Your Work**; or

3. **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

This insurance does not apply to any liability arising out of:

1.  any violation of any securities law or similar law or any regulation promulgated thereunder;

2.  the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3.  any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4.  any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T.  **Unauthorized Use of Another's Name or Product**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U.  **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

1.  caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2.  arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3.  arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4.  arising out of a criminal act committed by or at the direction of the **Insured**;

5.  for which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6.  arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7.  arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8.  arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

V.  **Various Laws**

This insurance does not apply to any obligation of the **Insured** under any of the following:

1.  the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2.  any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W.  **Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

X.   **War**

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1.   Civil war; or

2.   Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

---

## VI.   CONDITIONS

A.   **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so.  If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B.   **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C.   **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy.   But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D.   **Cancellation**

1.   You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.   We may cancel this policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.   The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium.  Our check

or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E. Change In Control

If during the **Policy Period**:

1. the first **Named Insured** designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2. any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.

Coverage will be afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1. of the Declarations or the end of the **Policy Period**, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

## F. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy.  This policy can be changed only by a written endorsement that we make to this policy.

## G. Duties in the Event of an Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy.  To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and any witnesses; and

   c. the nature and location of any injury or damage arising out of the **Occurrence**.

2. If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

   Written notice should be mailed, delivered, faxed or emailed to:

AIG Domestic Claims, Inc.
Excess Casualty Claims Department
Segmentation Unit
175 Water Street, 22nd Floor
New York, NY  10038
Fax:  (866) 743-4376
Email:  excessfnol@aig.com

3. You and any other involved **Insured** must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

   b. authorize us to obtain records and other information;

   c. cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4. No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## H. Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

## I. Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions that we find.  We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public.  We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

## J. Legal Actions Against Us

No person or organization has a right under this policy:

1. to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2. to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

## K. Maintenance of Scheduled Underlying Insurance

You agree that during the **Policy Period**:

1. you will keep **Scheduled Underlying Insurance** in full force and effect;

2. the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3.  the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4.  any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L.  **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**.  However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M.  **Premium**

The first **Named Insured** designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6. of the Declarations.  At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force.  If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium.  If the earned premium is greater than the Advance Premium, you will promptly pay us the difference.  If the earned premium is less than the Advance Premium, we will return the difference to you.  But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the **Policy Period**.

N.  **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1. of the Declarations, this insurance applies:

1.  as if each **Named Insured** were the only **Named Insured**; and

2.  separately to each **Insured** against whom claim is made or **Suit** is brought.

O.  **Transfer of Rights of Recovery**

1.  If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2.  Any recoveries will be applied as follows:

    a.  any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

    b.  we then will be reimbursed up to the amount we have paid; and

    c.  lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

*Archive Copy* ©2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3.  If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

P.  **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.  However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.  **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R.  **Violation of Economic or Trade Sanctions**

If coverage for a claim or **Suit** under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

---

## VII.  DEFINITIONS

A.  **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

1.  notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.  regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B.  **Auto** means:

1.  a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2.  any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, **Auto** does not include **Mobile Equipment**.

C.  **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D.  **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

1.  damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

2.  significant adverse regional or national media coverage.

*Archive Copy* ©2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E. **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

1. amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2. amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G. **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1. medical expenses;

2. funeral expenses;

3. psychological counseling;

4. travel expenses;

5. temporary living expenses;

6. expenses to secure the scene of a **Crisis Management Event**; and

7. any other expenses pre-approved by the Company.

**CrisisResponse Costs** does not include defense costs or **Crisis Management Loss**.

I. **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D. of the Declarations.

J. **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K. **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

*Archive Copy* ©2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.  your fulfilling the terms of the contract or agreement.

M.  **Insured** means:

1.  the **Named Insured**;

2.  if you are designated in the declarations as:

    a.  an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

    b.  a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  a limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers;

    d.  an organization other than a partnership, joint venture or limited liability company, you are an insured.  Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders;

    e.  a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

3.  your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.  your volunteer workers only while performing duties related to the conduct of your business;

5.  any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.  your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy;

7.  any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such  **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

    a.  no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

    b.  no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

N.  **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship).  A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

   1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   2. vehicles maintained for use solely on or next to premises you own or rent;

   3. vehicles that travel on crawler treads;

   4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      a. power cranes, shovels, loaders, diggers or drills; or

      b. road construction or resurfacing equipment such as graders, scrapers or rollers;

   5. vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      b. cherry pickers and similar devices used to raise or lower workers;

   6. vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

      a. equipment designed primarily for:

i)   snow removal;

ii)   road maintenance, but not construction or resurfacing; or

iii)   street cleaning;

b.   cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos.**

R.   **Named Insured** means:

1.   any person or organization designated in Item 1. of the Declarations;

2.   as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.   after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

a.   coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b.   you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**.  If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured,** under the highest applicable limit of **Scheduled Underlying Insurance**.

S.   **Occurrence** means:

1.   as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.   as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**.  All damages that arise from the same, related or repeated injurious

material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T. **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

U. **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

   1.  false arrest, detention or imprisonment;

   2.  malicious prosecution;

   3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

   4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

   5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

   6.  the use of another's advertising idea in your **Advertisement**; or

   7.  infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V. **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

W. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

X. **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

   1.  products that are still in your physical possession; or

   2.  work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

      a.  when all of the work called for in your contract has been completed;

      b.  when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

      c.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

   1.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

Y.     **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.   **Retained Limit** means:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2. the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA.  **Scheduled Underlying Insurance** means:

1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB.  **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC.  **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged.  **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD.  **Your Product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a.  you;

   b.  others trading under your name; or

   c.  a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or

products.

**Your Product** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.  the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE.  **Your Work** means:

1   work or operations performed by you or on your behalf; and

2.  materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.  the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.

_____
Secretary

_____
President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

_____
Authorized Representative

Page 24 of 24
**Archive Copy**©2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Commercial Umbrella Liability Policy with CrisisResponse**
**SCHEDULE OF UNDERLYING INSURANCE**

Issued to: MCKESSON CORPORATION                                  Policy Number:        5443284

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | Old Republic 07/01/08 07/01/08 | $5,000,000 EACH OCCURRENCE $5,000,000 GENERAL AGGREGATE $5,000,000 PRODUCTS/C. OPS. AGGREGATE |
| | | Defense Expenses are in addition to the limit |
| FOREIGN GL LIABILITY | INSURANCE CO STATE OF PA 10/01/07 10/01/08 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS / COMP / OPS AGG. $4,000,000 POLICY AGGREGATE |
| | | Defense Expenses are in addition to the limit |
| AUTO LIABILITY | Old Republic 07/01/08 07/01/09 | $1,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |
| AUTO LIABILITY (CANADA) | Old Republic 07/01/08 07/01/09 | $1,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006                    *Archive Copy*

**Commercial Umbrella Liability Policy with CrisisResponse℠**
**SCHEDULE OF UNDERLYING INSURANCE**

Issued to: MCKESSON CORPORATION                    Policy Number:        5443284

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| FOREIGN AL LIABILITY | INSURANCE CO STATE OF PA 10/01/07 10/01/08 | $1,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY | Old Republic 07/01/08 07/01/09 | $5,000,000 EACH ACCIDENT $5,000,000 DISEASE EACH EMPLOYEE $5,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY (SELF INSURED STATES) | Old Republic 07/01/08 07/01/09 | $4,900,000 EACH ACCIDENT $4,900,000 DISEASE EACH EMPLOYEE $4,900,000 DISEASE POLICY LIMIT EXCESS OF $100,000 SELF INSURED RETENTION |
| | | Defense Expenses are in addition to the SIR Defense Expenses are in addition to the limit |
| FOREIGN EMPLOYERS LIABILITY | INSURANCE CO STATE OF PA 10/01/07 10/01/08 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006

*Archive Copy*

**Commercial Umbrella Liability Policy with CrisisResponse**
## SCHEDULE OF UNDERLYING INSURANCE

Issued to: MCKESSON CORPORATION                          Policy Number:        5443284

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| UK EMPLOYERS LIABILITY | INSURANCE CO STATE OF PA<br>10/01/07<br>10/01/08 | 10,000,000 Pounds<br>EACH ACCIDENT |
| | | Defense Expenses are in addition to the limit |
| FOREIGN EMPLOYEE BENEFITS LIABILITY | INSURANCE CO STATE OF PA<br>10/01/07<br>10/01/08 | $1,000,000<br>EACH CLAIM<br>$1,000,000<br> AGGREGATE |
| | | Defense Expenses are in addition to the limit |

_(signature)_
_____
**AUTHORIZED REPRESENTATIVE**

UNDSCH (5/99)
AH0006                     *Archive Copy*

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury--in concurrence with the Secretary of State, and the Attorney General of the United States--to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insu rance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $9,821.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

96556 (1/08)
© 2007 National Association of Insurance Commissioners

*Archive Copy*

**ENDORSEMENT NO.**1

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.


**Commercial Umbrella Liability Policy With CrisisResponse** ®

**Retained Limit Amendatory Endorsement**

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1.   The **DECLARATIONS, ITEM 5. SELF INSURED RETENTION** is deleted in its entirety.

2.   **Section IV. LIMITS OF INSURANCE**, Paragraphs B., G., H. and M. are deleted in their entireties and replaced by the following:

B.   The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

1.   damages included within the **Products-Completed Operations Hazard**, and

2.   damages because of **Bodily Injury** or **Property Damage** to which this insurance applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto**.

G.   If the total applicable Retained Limit(s) listed in the Schedule of Retained Limits are reduced or exhausted by payment of **Loss** to which this policy applies, we will:

1. in the event of reduction, pay in excess of the remaining underlying **Retained Limits**, or

2. in the event of exhaustion of the underlying **Retained Limits**, continue in force as underlying insurance.

H.   **Defense Expenses** will be in addition to the applicable Limits of Insurance of this policy.  Provided, however, that if the amount of applicable **Retained Limit** over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then solely with respect to coverage afforded by this policy that is subject to such Retained Limit, such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

M.   We will not make any payment under this policy unless and  until the total applicable **Retained Limit(s)** have been exhausted  by the payment of **Loss** to which this  policy applies and any applicable **Other Insurance** have been exhausted.

When the amount  of **Loss** has  been determined by  an agreed settlement  or a  final judgment, we will promptly  pay on behalf  of the **Insured**  the amount of  such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us,  the **Insured** and the claimant  or the claimant's legal representative.

3.    **Section  III. DEFENSE PROVISIONS,**  Paragraph A. is  deleted in its  entirety and replaced by  the following:

**III.  DEFENSE PROVISIONS**

A.  We will  have the right  and duty  to defend any **Suit** against  the **Insured** that seeks damages for **Bodily Injury**,  **Property Damage**  or **Personal Injury and  Advertising Injury** covered by this  policy, even if  the **Suit** is groundless, false  or fraudulent when the applicable limits listed in  the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this  policy applies.

If we are prevented by law or statute from assuming the obligations specified  under this provision, we will pay any expenses incurred with our consent.

4.    **Section V. EXCLUSIONS**, Paragraphs I.1., I.2., I.3.,  and M. are deleted in their entireties.

5.    **Section V. EXCLUSIONS**, Paragraph Q. is amended as follows:

The last two sentences of  Paragraph Q. are deleted and  the clause "However, Paragraph  1 of this exclusion will not  apply if coverage for  such Bodily Injury or  Property Damage as is described in  subparagraphs 1) through 6)  below is provided by Scheduled Underlying Insurance:", is deleted in its entirety and replaced by the following:

However, this  exclusion will not  apply as described in  subparagraphs 1) through  6) below:

provided, however, that the above amendments  to **Section V. EXCLUSIONS,** Paragraph  Q., do not apply if a separate  endorsement attached to this policy deletes  and replaces **Section V. EXCLUSIONS**, Paragraph Q.

6.    **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** mean payment(s) allocated to  the investigation, settlement or defense  of a specific loss, claim or **Suit,** including but not limited to:

1.    Attorney's fees and all other investigation, loss adjustment and litigation expenses,

2.    Premiums on bonds to release attachments,

3.    Premiums on appeal bonds required by law to appeal any claim or **Suit,**

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

    4.      Costs taxed against the **Insured** in any claim or **Suit**,

    5.      Pre-judgment interest awarded against the **Insured**, and

    6.      Interest that accrues after entry of judgment.

7.      **Section VII. DEFINITIONS**, Paragraph  D., subparagraph  1. is deleted and  replaced by  the following:

    1.  damages covered by this policy that are in excess of the **Retained Limit**, and

8 .     **Section VII. DEFINITIONS**,  Paragraph M.  is amended  to include  the following  additional subparagraph:

    8. Any person  or organization to  whom you become  obligated to include as  an additional insured under this policy, as a result  of any contract or agreement you enter  into which requires you to furnish insurance to  that person or organization of the  type provided by this policy,  but only  with respect  to liability  arising out  of  your operations,  including **Your Work** and  **Your Product**, or  premises owned by  or rented  to you.   However, the insurance provided will not exceed the lesser of:

        a.  The coverages and Limits of Insurance of this policy, or

        b.  The coverage and Limits of Insurance required by said contract or agreement.

However, no such person or organization  is an **Insured** by virtue of  this provision 8. of this Paragraph M. of Section VII. if such person or  organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or  member, or is a partner or member of such partnership, joint venture or limited liability company.

9.      **Section VII. DEFINITIONS**,  the  phrase  "Notwithstanding  any  of  the  above:"  and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

    Notwithstanding any of  the above provisions  1. through  7. of this Paragraph  M. of Section VII., no person or organization is  an **Insured** with respect to the conduct  of any current, past or newly formed partnership, joint  venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

10.    **Section VII. DEFINITIONS**, Paragraph P. is deleted in its  entirety and replaced by the following:

    P.    **Loss**  means  those sums  actually paid as  judgments or settlements, provided, however,  that  if  the  applicable **Retained Limit**  is  specifically  designated  in  the Schedule of Retained Limits  as including **Defense Expenses**,  then **Loss** shall include such **Defense Expenses**.

11.    **Section VII. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

    **R. Named Insured** means:

       1.  any person or organization designated in Item 1 of the Declarations,

       2.  as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization, and

       3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

          a.  coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization, and

          b.  you give us prompt notice after you acquire or form such organization.

    Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

12.    **Section VII. DEFINITIONS**, Paragraph Z. is deleted in its entirety and replaced by the following:

    **Z. Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

    The **Retained Limit(s)** listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

          a.  If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit**.

          b.  If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

**Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit.**

13.   **Section VI. CONDITIONS,** Paragraphs A. and C. are deleted in their entireties and replaced by the following:

A.   **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable **Retained Limit(s)**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

C.   **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a **Retained Limit**.

14. If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

<u>**Schedule of Retained Limits**</u>

| **Coverage(s)** | **Retained Limit(s)** | |
|---|---|---|
| **GENERAL LIABILITY** | $5,000,000 | **EACH OCCURRENCE** |
| | $5,000,000 | **PERSONAL& ADVERTISING INJURY** |
| | $7,500,000 | **GENERAL AGGREGATE** |
| | **DEFENSE COSTS ARE INCLUDED THE RETAINED LIMIT** | |
| **PRODUCTS / COMPLETED OPERATIONS** | $5,000,000 | **EACH OCCURRENCE** |
| | **DEFENSE COSTS ARE INCLUDED THE RETAINED LIMIT** | |
| **EXCESS AUTO LIABILITY** | $4,000,000 | **COMBINED SINGLE LIMIT EXCESS OF** |
| | $1,000,000 | **COMBINED SINGLE LIMIT** |
| | **DEFENSE COSTS ARE IN ADDITION TO THE RETAINED LIMIT** | |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT No. 2

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**     5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employee Benefits Liability Limitation Claims Made Version Endorsement**

**NOTICE:  Please read this endorsement carefully.  This endorsement provides coverage on a  claims made basis.  Except to the extent as may otherwise be provided herein, the coverage of this insurance is generally limited to liability for only those claims that are first made during the Policy Period and reported in writing to us.**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1.  any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2.  any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

    a.  giving counsel to employees with respect to a **Plan**;

    b.  interpreting a **Plan**;

    c.  handling of records in connection with a **Plan**;

    d.  effecting enrollment, termination or cancellation of employees under a **Plan**; or

    e.  any claim against an **Insured** solely by reason of his, her or its status as an administrator, the **Plan** or you as sponsor of the **Plan**.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by **Scheduled Underlying Insurance**.

Solely as respects this endorsement, this policy will only provide coverage for a **Claim** made against the **Insured** during the **Policy Period**:

    a)  If the insurance provided by **Scheduled Underlying Insurance** provides coverage for **Occurrences** occurring on or after a specified Retroactive Date for a claim for damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** first made in writing against any **Insured** in accordance with Paragraph b) below during the **Policy Period** or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

b) A **Claim** by any person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1. When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period; or

2. When we make settlement in accordance with Paragraph a) above.

Notwithstanding the above, this insurance shall not apply to:

1. any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date set forth in the **Schedule Underlying Insurance**, if the **Insured**, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an **Occurrence**, knew as of the Continuity Date shown above that such **Occurrence** could result in a **Claim**.

2. any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrences** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3. any **Claim** alleging or arising out of any **Claim** or **Suit** pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or **Suit**.

If **Scheduled Underlying Insurance** does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Claim** means a written demand upon the **Insured** for compensatory damages or services and shall include the service of **Suit** or institution of arbitration proceedings against the **Insured**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **Plan** is subject.

**Plan** means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. and 2. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

83073 (09/03)                                    Page 2 of 2
AH1228                    *Archive Copy*

**ENDORSEMENT No.** 3

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Non-Concurrency Endorsement**

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

If any of the policy periods of **Scheduled Underlying Insurance**, (including any renewals and replacements thereof) apply nonconcurrently with the **Policy Period** of this policy, and in the event of reduction or exhaustion of the aggregate limit(s) of the underlying policy(ies) by payment of damages taking place during the policy period of such underlying policy(ies), we will:

1.  In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.  In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance;

    subject to the definitions, conditions and exclusions of the applicable underlying policy(ies).

Coverage under this policy, however, applies only to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** that takes place during the **Policy Period** of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

81581 (02/03)
AH1077          *Archive Copy*

## ENDORSEMENT No. 4

This endorsement, effective 12:01 AM:  July 1, 2008

Forms a part of policy no:          5443284

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Self Insured Retention Applicable To Specified Coverage After Underlying Limits Are Reduced or Exhausted Endorsement

This policy is amended as follows:

This endorsement will apply to the below **Specified Coverage** only:

GENERAL LIABILITY

The **Declarations**, **ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional **Self Insured Retention**:

**Specified Coverage** Self Insured Retention -  $250,000          Each Occurrence

**Section III. DEFENSE**, Paragraph A. is deleted and replaced by the following:

We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the greater of:

1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance,** or

2.  the **Specified Coverage** Self Insured Retention

have been exhausted by payment of **Loss** to which this policy applies;

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

**Section IV. LIMITS OF INSURANCE**, Paragraphs F., G. and M. are deleted in their entireties and replaced by the following:

F.  This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

1.  in the event of reduction, pay excess of a.) the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance;** or b.) the **Specified Coverage** Self Insured Retention, whichever is greater; and

87233 (12/04)                                    Page 1 of 2
AH1501              ***Archive Copy***

2.  in the event of exhaustion, pay in excess of the **Specified Coverage** Self Insured Retention.

The **Specified Coverage** Self Insured Retention will apply per **Occurrence**.

M.  We will not make any payment under this policy unless and until the greater of:

1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies; or

2.  the total applicable **Specified Coverage** Self-Insured Retention has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgement, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

**Section IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The **Specified Coverage** Self Insured Retention will not be reduced by **Defense Expenses**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1.  Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  Costs taxed against the **Insured** in any claim or **Suit**;

5.  Pre-judgment interest awarded against the **Insured**; and

6.  Interest that accrues after entry of judgment.

**Specified Coverage** means the coverage that is specified at the top of this endorsement.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No.** 5

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Amendment of Various Personal Injury and Advertising Injury
Exclusion Endorsement
(Amendment of Exclusion U.)**

This policy is amended as follows:

**Section V. EXCLUSIONS, U. Various Personal Injury and Advertising Injury,** Paragraph 2. is deleted in its entirety and replaced by the following:

2.   arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of the **Insured** with knowledge of its falsity;

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

89452 (6/05)
AH1672                       *Archive Copy*

## ENDORSEMENT No. 6

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Named Peril and Time Element Pollution
### Self-Insured Retention Endorsement
### (Products-Completed Operations Hazard Version)

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.  Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of:

i.   Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, earthquake, automatic sprinkler leakage, collision or upset of an **Auto** or **Mobile Equipment** or aircraft; or

ii.  Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** and included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

(a)  discarded, dumped, abandoned, thrown away; or

(b)  transported, handled, stored, treated, disposed of or processed as waste;

by anyone; or

iii. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that meets all of the following conditions:

89470 (6/05)                              Page 1 of 3
AH1690        *Archive Copy*

(a) It was accidental and neither expected nor intended by the **Insured**. This condition would not serve to deny coverage for a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury** or **Property Damage** could occur;

(b) It was demonstrable as having commenced on a specific date during the **Policy Period**;

(c) Its commencement became known to the **Insured** within (30) calendar days;

(d) Its commencement was reported in writing to us within (80) calendar days of becoming known to any officer of the **Insured**; any manager in your risk management, insurance or legal department; any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or Suit; or any **Insured** authorized or responsible to report the commencement; and

(e) Reasonable effort was expended by the **Insured** to terminate the discharge, dispersal, seepage, migration, release or escape of **Pollutants** as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

i. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

ii. Any fines or penalties;

iii. Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement. However, this provision iii will not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

iv. Acid rain or acid runoff;

v. Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said **Pollutants**; or

vi. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$5,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** covered under this endorsement). This Self-Insured Retention will not be reduced by **Defense Expenses**.

The above Self-Insured Retention applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the above Self-Insured Retention if such policies were purchased by the **Named Insured** to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the above Self-Insured Retention.

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and  Paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured** until the above **Self-Insured Retention** is exhausted by payment of **Loss.**  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this endorsement may apply.  If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** means a payment allocated to defend a specific **Suit**, including but not limited to:

1.  Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  Court costs taxed against the **Insured** in any **Suit**;

5.  Pre-judgment interest awarded against the **Insured**; and

6.  Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No. 7**

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy with CrisisResponse®**

**Act of Terrorism Self-Insured Retention Endorsement**

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

The **DECLARATIONS, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional Self-Insured Retention:

**ACT OF TERRORISM SELF-INSURED RETENTION** - $5,000,000 Each **Occurrence** (As respects all liability covered under this policy arising out of any **Act of Terrorism**.)  The **Act of Terrorism Self-Insured Retention** will not be reduced or exhausted by **Defense Expenses**.

**ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION** is amended to include the following:

**ACT OF TERRORISM PREMIUM**        $9,821

**Section IV. LIMITS OF INSURANCE,** is amended to include the following additional provision:

The **Act of Terrorism Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Act of Terrorism Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Act of Terrorism Self-Insured Retention**.

**Section III. DEFENSE PROVISIONS,** Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

A.  We will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Act of Terrorism** means:

1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**;

6. Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 8

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Industrial Aid Aircraft Limitation Endorsement**

This policy is amended as follows:

**ITEM 3. LIMITS OF INSURANCE** of the **DECLARATIONS** is amended to include the following additional **Self-Insured Retention**:

$500,000,000 **Industrial Aid Aircraft Self-Insured Retention**/Each Occurrence.  (As respects claims and **Suits** seeking damages for **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance use, or entrustment to others of any **Industrial Aid Aircraft** owned or operated by or rented or loaned to any **Insured**.  Use includes operation and loading and unloading).

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS**, Paragraphs A. 1. and A. 2., and D. are deleted in their entirety, and paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

The **Industrial Aid Aircraft Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to the **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Industrial Aid Aircraft Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Industrial Aid Aircraft Self-Insured Retention**.

The **Industrial Aid Aircraft Self-Insured Retention** will not be reduced by **Defense Expenses**.

For the purpose of this endorsement only and solely with respect to any and all references to aircraft, **Section V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.  **Aircraft**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, or entrustment to others of any aircraft owned or operated by or rented or loaned to any **Insured**.  Use includes operation and loading and unloading.

81912 (5/06)                                    Page 1 of 2
AH1886              ***Archive Copy***

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance use, or entrustment to others of any **Industrial Aid Aircraft** owned or operated by or rented or loaned to any **Insured**.  Use includes operation and loading and unloading.

It is understood that any and all references to watercraft in **Section V. EXCLUSIONS,** Paragraph A. remains unchanged, unless amended by separate endorsement.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1.  attorney's fees and all other investigation, loss adjustment and litigation expenses;

2.  premiums on bonds to release attachments;

3.  premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  costs taxed against the **Insured** in any claim or **Suit**;

5.  pre-judgment interest awarded against the **Insured**; and

6.  interest that accrues after entry of judgment.

**Industrial Aid Aircraft** means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of employees and their non fee paying passenger guests.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No.** 9

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employers' Liability / Stop Gap Limitation Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

   **Employers' Liability**

   This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

   However, if insurance for such **Bodily Injury** is provided by a policy listed in the **Scheduled Underlying Insurance**:

   1.  The above exclusion shall not apply; and

   2.  Coverage under this policy for such **Bodily Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

82616 (5/06)
AH1887                 *Archive Copy*

**ENDORSEMENT No.** 10

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**CrisisResponse Coverage Enhancement Endorsement**

This policy is amended as follows:

It is understood and agreed that in every instance in which the phrase "CrisisResponse Sublimit of Insurance" is referenced in this policy and/or its endorsements, the phrase "CrisisResponse Limit of Insurance" shall be substituted.

**Section IV. LIMITS OF INSURANCE,** Paragraph I. is deleted in its entirety and replaced by the following:

I.    The **CrisisResponse Limit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**.  This **CrisisResponse Limit of Insurance** will be in addition to the applicable Limit of Insurance.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

94621 (5/07)
AH2035                    *Archive Copy*

**ENDORSEMENT No.** 11

**This endorsement, effective 12:01 AM:**   July 1, 2008

**Forms a part of policy no.:**          5443284

**Issued to:**   MCKESSON CORPORATION

**By:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Specified Products Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Specified Products**

This insurance does not apply to any liability arising out of the following products listed below:

ANY PRODUCT MANUFACTURED BY ORCHARD PHARMACEUTICAL LTD OR
NICHOLAS PIRAMAL INDIA LTD (NPIL)

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

83097 (09/03)
AH1250              *Archive Copy*

**ENDORSEMENT No.** 12

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse®**

**California Cancellation and Nonrenewal Amendatory Endorsement**

This policy is amended as follows:

I.  **Section VI. CONDITIONS**, **D. Cancellation**, is deleted in its entirety and replaced by the following:

D.  **Cancellation**

1.  You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  New Policies in Effect for Sixty (60) Days or Less:

    We may cancel this policy.  If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

3.  New Policies in Effect for More Than Sixty (60) Days and Any Renewal Policy:

    We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

    a.  Nonpayment of premium, including payment due on a prior policy issued by us and due during the **Policy Period** covering the same risks;

    b.  A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

    c.  Discovery of fraud or material misrepresentation by either of the following:

        i.   You or other **Insureds** or your representative in obtaining this policy; or
        ii.  You or your representative in pursuing a claim under this policy.

    d.  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

    e.  Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

81589 (10/04)                              Page 1 of 3
AH1385              ***Archive Copy***

f.   A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g.   A determination by the commissioner that a continuation of this policy's coverage could place us in violation at the laws at this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h.   A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased or changed risk is included in this policy;

i.   A material change in limits, type or scope of coverage or exclusions in **Scheduled Underlying Insurance**;

j.   Cancellation or nonrenewal of any **Scheduled Underlying Insurance** where such insurance is not replaced without lapse; or

k.   A reduction in financial rating or grade of one or more insurers issuing any **Scheduled Underlying Insurance** based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

4.   The **Policy Period** will end on the day and hour stated in the cancellation notice.

5.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 6 of the Declarations.

6.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 6 of the Declarations.

7.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.   The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

II.   **Section VI. CONDITIONS** is amended to include the following additional provision:

**Nonrenewal**

If we decide not to renew this policy, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days, but no more than one hundred twenty (120) days prior to the end of the **Policy Period**.  The notice shall contain the reason or reasons for nonrenewal of this policy.

III. **Section VI. CONDITIONS** is amended to include the following additional provision:

**Increase in Premium, Reduction in Limits or Change in Conditions of Coverage**

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2.  Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3.  A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4.  A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in this policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in this policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No.** 13

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Duties in the Event of an Occurrence, Claim or Suit**

This policy is amended as follows:

**Section VI. CONDITIONS, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit,** subparagraph 1. is deleted in its entirety and replaced by the following:

1.  You must see to it that we are notified as soon as practicable after your corporate officer receives notice from its agent, servant, employee or any other person, of an **Occurrence** that may result in a claim or **Suit** under this policy.  To the extent possible, notice should include:

    a.  how, when and where the **Occurrence** took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the **Occurrence**.

However it is understood that the provisions of this endorsement will not supercede **Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** of the policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86456 (8/04)
AH1437                    *Archive Copy*

ENDORSEMENT No. 14

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**      5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Limits of Insurance Amendatory Endorsement
(Deletion of Paragraph E.)**

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE,** Paragraph E. is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86460 (8/04)
AH1441           ***Archive Copy***

**ENDORSEMENT No.** 15

**This endorsement, effective 12:01 AM:**   July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**   MCKESSON CORPORATION

**By:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[SM]

**Notice of Occurrence**

This policy is amended as follows:

**Section VI. CONDITIONS**, Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following provision:

5.   Your failure to give first report of a claim to us will not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you will report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_[signature]_

——————————————————————
**Authorized Representative**
or Countersignature (in States Where Applicable)

80454 (07/02)
AH0939

***Archive Copy***

**ENDORSEMENT No.** 16

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**  5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Foreign Liability Follow-Form Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following exclusion:

**Foreign Liability**

This insurance does not apply to any liability arising out of an **Occurrence** that takes place outside that United States of America, its territories and possessions, Puerto Rico and Canada.

However, this exclusion will not apply if coverage is provided by a policy listed in the **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury**,  **Property Damage**, or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of such **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80432 (07/02)
AH0918

*Archive Copy*

**ENDORSEMENT No. 17**

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**  5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Duties in the Event of an Occurrence, Claim or Suit and**
**Schedule A - Approved Crisis Management Firms**

Solely as respects coverage provided by **Section II INSURING AGREEMENT - CRISISRESPONSE℠ AND EXCESS CASUALTY CRISIS FUND®**, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

> AIG Domestic Claims, Inc.
> Excess Casualty Claims Department
> Segmentation Unit
> 175 Water Street, 22nd Floor
> New York, NY  10038
> Fax: (866) 743-4376
> E-mail:  excessfnol@aig.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

### Schedule A

**Approved Crisis Management Firms**

The following firms are approved **Crisis Response Firms**:

**Crisis Communications Management Firms:**

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Abernathy MacGregor Group**

| | | |
|---|---|---|
| <u>New York Office</u><br>501 Madison Avenue<br>New York, N.Y. 10022<br>www.abmac.com | James T. MacGregor<br>Tel: (212) 371-5999<br>Cell: (646) 236-3271<br>Fax: (212) 752-0723<br>jtm@abmac.com | **Emergency**<br><br>Tel: (212) 343-0818<br>Cell: (917) 449-9964 |
| | Rhonda Barnat<br>Tel: (212) 371-5999<br>Cell: (917) 912-6378<br>Fax: (212) 752-0723<br>rb@abmac.com | |
| <u>Los Angeles Office</u><br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel: (213) 630-6550<br>Cell: (213) 489-3443<br>Fax: (213) 489-3443<br>idc@abmac.com | **Emergency**<br><br>Tel: (818) 957-5650<br>Cell: (917) 940-3476 |

**Citigate Sard Verbinnen**

| | | |
|---|---|---|
| <u>New York City</u><br>630 Third Avenue<br>New York, N.Y. 10017<br>www.sardverb.com | George Sard<br>Tel: (212) 687-8080<br>Fax: (212) 687-8344<br>gsard@sardverb.com | **Emergency**<br><br>(917) 750-4392<br>24 Hours/7 Day |
| | Paul Verbinnen<br>Tel: (212) 687-8080<br>Fax: (212) 687-8344<br>pv@sardverb.com | |
| <u>Chicago</u><br>343 West Erie Street<br>Suite 600<br>Chicago, IL 60610 | Ron Culp<br>Tel: (312) 944-7398<br>Fax: (312) 944-7785 | |

83687 (9/07)
AH2128                     *Archive Copy*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
| --- | --- | --- |

San Francisco
101 Second Street
Suite 2250
San Francisco, CA 94106

Paul Kranhold
Tel: (415) 618-8750
Fax: (415) 618-8702

**Hill and Knowlton**

New York City
466 Lexington Avenue
3rd Floor
New York, N.Y.
www.hillandknowlton.com

Richard C. Hyde
Direct Tel: (212) 885-0372
Main: (212)885-0300
Cell: (917) 816-2208
Fax: (212) 885-0570
dhyde@hillandknowlton.com

**Emergency**

H&K Crisis Pager
(818) 264-5193
24 Hours/7 Days

Christopher R. Gidez
Direct Tel: (212) 885-0480
Main Tel: (212) 885-0300
Cell: (914) 319-6582
Fax: (212) 885-0570
cgidez@hillandknowlton.com

Ottawa, Canada
55 Metcalfe Street
Suite 1100
Ottawa, Canada
K1P  6L5

Jo-Anne Polak
Direct Tel: (613) 786-9954
Main Tel: (613) 238-4371
Cell: (613) 761-2684
Fax: (613) 238-8642
jpolak@hillandknowlton.ca

**Lexicon Communications Corp.**

Pasadena
(Suburb of Los Angeles)
520 Bellmore Way
Pasadena CA 91103
information@lexiconcorp.com

Steven Fink
Direct Tel: (626) 683-9333
Main Tel: (626) 683-9200
Cell: (626) 253-1519
Fax: (626) 449-7659
sfink@lexiconcorp.com

**Emergency**

(626) 683-9333
24 Hours/7 Days

**Zeno Group**

Washington, D.C.
The Foundry Building
1055 Thomas Jefferson St., NW
Washington, D.C. 20007
www.zenogroup.com

Phillip Armstrong
Direct Tel: (202) 965-7801
Cell: (202) 669-9926
phil.armstrong@zenogroup.com

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
| --- | --- | --- |

### Robinson, Lerer & Montgomery

New York City
1345 Avenue of the Americas
4th Floor
New York, N.Y. 10105
www.rimnet.com

Michael Gross
Direct Tel: (646) 805-2003
Main Tel: (646) 805-2000
Cell: (917) 853-0620
Fax: (646) 805-2828
mgross@rimnet.com

### Sitrick and Company, Inc.

Los Angeles
1840 Century Park East
Suite 800
Los Angeles, CA 90067
www.sitrick.com

Michael S. Sitrick
Direct Tel: (310) 788-2850
Fax: (310) 788-2855
mike_sitrick@sitrick.com

**Emergency**

(310) 358-1011
24 Hours/7 Days

New York City
655 Third Avenue
New York, N.Y. 10017

Jeffrey Lloyd
Direct Tel: (212) 573-6393
Main Tel: (212) 573-6100
Cell: (310) 963-2850
Fax: (212) 573-6165

### Investigative Firms:

### Kroll Associates

New York City
900 Third Avenue
New York, N.Y. 10022

Mary Jo Phillips
Direct Tel: (212) 833-3246
Fax: (212) 644-5794
mphillips@krollworldwide.com

**Emergency**

(800) GET-KROL
(800) 438-5765
World Wide Crisis
Division
24 Hours/7 Days

### GAB Robins North America, Inc.

Parsippany
9 Campus Drive
Suite 7
Parsippany, N.J. 07504
www.gabrobinsna.com

Kim Mertens
Direct Tel: (973) 993-3438
Cell: (201) 404-6026
Fax: (973) 993-1624
mertens@gabrobins.com

**Emergency**

800-422-4436

| **FIRM/ADDRESS** | **CONTACT/TELEPHONE** | **EMERGENCY TELEPHONE** |
|---|---|---|

Montreal                        Andre Mancini                  **Emergency**
CGI (Division of GAB Robins)    Direct Tel: (800) 263-5361
1611 Cremazie Blvd. East        Cell: (450) 566-5073            800-263-5361
3rd Floor                       Fax: (514) 735-8439
Montreal, Quebec H2M 2P2        andre.mancini@cgi.com
Canada
www.cgi.com-insurance.htm

**ENDORSEMENT No.** 18

**This endorsement, effective 12:01 AM:**   July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**   MCKESSON CORPORATION

**By:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[SM]

**Third Party Discrimination Coverage Endorsement**

This policy is amended as follows:

**Section VII. DEFINITIONS**, Paragraph U. is deleted in it's entirety and replaced by the following:

U. **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of  private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only if such discrimination or humiliation is:

    a.  not committed by, at the direction of, or with the knowledge of you and or any of your executive officers or directors; and

    b.  not directly or indirectly related to the employment of any person or persons by you;

7.  the use of another's advertising idea in your **Advertisement**; or

8.  infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No.** 19

**This endorsement, effective 12:01 AM:**   July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**   MCKESSON CORPORATION

**By:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse<sup>SM</sup>**

**Arbitration Condition Endorsement**
**(Solely Applicable To Exclusion Q. And Any Endorsements Amending Exclusion Q.)**
**(Domicile State)**

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Arbitration**

In the event of a disagreement as to the interpretation of Exclusion Q. of this policy or a disagreement as to the interpretation any endorsements attached to this policy amending Exclusion Q., the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator.  The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles.  The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators.  The award will be issued within thirty (30) days of the close of the hearings.  Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations.  The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

82425 (06/03)
AH1180                    *Archive Copy*

ENDORSEMENT NO. 20

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**ADDITIONAL NAMED INSURED**</u>

This policy is amended as follows:

**DECLARATIONS ITEM 1** is amended by adding the following as **Named Insured(s)** under this policy:

**McKesson Corporation**
        ***Beldere Corporation***
                S.K.U., Inc. (50%)
        ***California Golden State Finance Company***
                CGSF Funding Corporation
        ***City Properties, S.A. (20%)***
        ***Crocker Plaza Company***
        ***D&K Healthcare Resources LLC***
                D&K Pharmacy Solutions, Inc.
                Diversified Healthcare, LLC
                Jaron, Inc.
                Jewett Drug LLC
                Medical & Vaccine Products, Inc.
                VC Services, Inc.
                Walsh Healthcare Solutions LLC
                        *Walsh Distribution, LLC*
                        *myhca, inc.*
        ***Foremost de Venezuela, S.A. (Forvensa) (40% owned by McKesson Corp., 60% by City Property)***
        ***Foremost Iran Corporation***
        ***Foremost Shir, Inc.***
        ***Foremost Tehran, Inc.***
        ***Golden State Insurance Company Limited***
        ***Goodman Manufacturing Company***
        ***Health Mart Systems, Inc.***
        ***Intercal, Inc. (15% owned by McKesson Corp.)***
        ***KWS & P, Inc.***
        ***KWS & P/SFA, Inc.***
        ***McKesson Asia-Pacific Pty Limited***
                McKesson New Zealand Limited
        ***McKesson Automation Inc.***
        ***McKesson Automation Systems Inc.***
                Parata Systems, LLC

***Archive Copy***

**ENDORSEMENT NO.** 20 (Continued)

SI/Baker, Inc.
**McKesson Capital Funding Corporation**
**McKesson Capital LLC**
**McKesson Information Solutions LLC**
    HBO & Company (VI), Inc.
    HBOC Medical Limited
    HTP, Inc.
    McKesson Health Solutions Holdings LLC
        *McKesson Health Solutions LLC*
            Access Health UK Ltd.
            McKesson Health Solutions Texas Inc.
        *McKessonHBOC (Gibraltar) Limited*
    McKesson Services LLC
        *A.L.I. Imaging Systems Corp.*
    Physician Micro Systems, Inc.
**McKesson International Holdings Limited**
    McKesson Financial Holdings Limited
        *McKesson Financial Holdings II Limited*
            McKesson (International) (Gibraltar) Limited
            McKesson International Holdings LLC
                McKesson International Holdings SRL
                McKesson International SRL
            McKesson International S.à.r.l.
                McKesson International Finance S.a.r.l.
                    McKesson International Capital S.a.r.l.
                    McKesson International Holdings S.a.r.l.
                      McKesson International Holdings II S.a.r.l.
                        McKesson Funding Company of Canada
                    McKesson International Holdings III S.a.r.l.
                      McKesson Finance Company of Canada
                      McKesson Canada Corporation
                        Clinique Sante Corporation
                        3071406 Nova Scotia Company
                        3087601 Nova Scotia Company
                        McKesson Logistics Solutions LLC
                          McKesson Logistics Solutions
                        McKesson Canada Support Services Corporation
                    McKesson International Holdings V S.a.r.l.
                      McKesson Automation Canada Corporation
                  McKesson International Holdings VI S.a.r.l.
                    Zee Medical Canada Corporation
            McKesson International Topholdings S.a.r.l.
        *McKesson Information Solutions Finance S.a.r.l.*
            McKesson Information Solutions Capital S.a.rl.
            McKesson Information Solutions Holdings S.a.r.l.
                 A.L.I. Technologies (Deutschland) GmbH
                 McKesson Information Solutions Ireland Limited
                 McKesson Information Solutions Netherlands B.V.
                    McKesson Nederland B.V.
                 McKesson Information Solutions Sweden AB
                    Medcon Ltd.

**Archive Copy**

**ENDORSEMENT NO.** 20 (Continued)

Medcon UK Limited
McKesson Information Solutions UK Limited
McKesson Information Solutions Holdings II S.a.r.l.
McKesson International Nova Scotia ULC
McKesson Medical Imaging Company
McKesson Information Solutions Holdings III S.a.r.l.
McKesson Health Solutions Canada Company
McKesson Information Solutions Holdings V S.a.r.l.
McKesson Information Solutions Holdings France S.a.r.l.
McKesson Information Solutions Holdings France SAS
*McKesson Information Solutions Holdings Limited*
*A.L.I. Holdings LLC*
Medical Imaging SRL
A.L.I. Technologies (International) LLC
*McKesson Information Solutions Holdings SRL*
*McKesson International LLC*
McKesson Information Solutions  SRL
*McKesson International Ireland Limited*
McKesson Health Solutions Puerto Rico Inc.
McKesson International Holdings IV S.à.r.l.
*A.L.I. Technologies (Europe) B.V.*
*McKesson International Netherlands B.V.*
*McKesson International Netherlands II B.V.*
Nadro S.A. de C.V.
Nadro Services, S. de R.L. de C.N.
McKesson International Holdings VII S.à.r.l.
*McKesson Specialty Prescription Services Corporation*
*McKesson Specialty Prescription Services (B.C.) Corporation*
**McKesson Medical-Surgical Holdings Inc.**
McKesson Medical-Surgical Inc.
*Cypress Medical Products LLC*
*McKesson Medical-Surgical FDT Inc.*
*Moore Medical LLC*
Podiatry Online, Inc.
*Sterling Medical Services, LLC*
*Titus Home Health Care LLC*
**McKesson Medical-Surgical Minnesota Inc.**
McKesson Medical-Surgical Medimart Inc.
McKesson Medical-Surgical Minnesota Supply Inc.
MSA Products LLC
**McKesson Pharmacy Optimization LLC**
**McKesson Property Company, Inc.**
DC Land Company
DCAZ Land Company
HF Land Company
**McKesson Specialty Arizona Inc.**
**McKesson Specialty Corporation**
**McKesson Specialty Distribution LLC**
**McKesson Specialty Holdings LLC**
National Oncology Alliance, Inc.
**McKesson Specialty Pharmaceuticals LLC (99% owned by McKesson Corporation, 1% owned by**

*Archive Copy*

**ENDORSEMENT NO.** 20 (Continued)

*McKesson Specialty Corporation)*
    *McKesson Transportation Systems, Inc.*
    *McQueary Bros. Drug Company*
    *Northstar Healthcare Holdings Limited*
        McKesson Medical-Surgical International Limited
        Northstar Healthcare Limited
    *Northstar Rx LLC*
    *N.V. Medicopharma (10% ownership)*
    *Oncology Holdings, Inc.*
        Oncology Holdings II, Inc.
            Cancer Clinics of Excellence LLC (McKesson ownership is 27.5%)
        OTN Participant, Inc.
        OTN Parent Corp.
            OTN Generics, Inc.
            OnMark, Inc.
            Oncology Therapeutics Network Corporation
                Oncology Therapeutics Network JV, L.P.
            Ivpcare, Inc.
                Ivpcare Northeast, Inc.
                Pharmatech Business Services, Inc.
*Parata Systems, LLC (39.06% owned by McKesson and subs)*
*Per-Se Technologies, Inc.*
        NDCHealth Corporation
            *NDC of Canada, Inc.*
            *NDCHealth Pharmacy Systems and Services, Inc.*
                NDCHealth Pharmacy Systems and Services ULC
            *PhyServe Solutions, Inc.*
        Patient Account Management Services, Inc.
        Per-Se Transaction Services, Inc.
        PST Products, LLC
            *Knowledgeable Healthcare Solutions, Inc.*
            *Per-Se Technologies Canada, Inc.*
            *Per-Se Technologies (UK) Limited*
        PST Services, Inc.
*Proventy*    (owned 18% by McKesson Corp)
*Purchasing Alliance for Clinical Therapeutics, LLC*
*Strategic Health Alliance Management Corp.*
        Strategic Health Alliance II, Inc.
*Verispan L.L.C. (42.18% ownership by McKesson Corporation)*
*Zee Medical, Inc.*
        CPG Industries, Inc.
        Fastpro International, Inc.
**McKesson Foundation Inc.**
**Wilmington Trust Company**

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT NO.** 21

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no.:**          5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Acquired Entity Endorsement
(Amendment of Definition of Named Insured)**

This policy is amended as follows:

**Section VII. Definitions**, Paragraph R. is amended to include the following additional subparagraphs:

R.      **Named Insured** means:

    a.      newly acquired or formed entities with operations that are not materially different from those of the **Insured** prior to such acquisition, formation or merger and with annual sales not exceeding FIVE HUNDRED MILLION dollars ($500,000,000.).

    b.      newly acquired or formed entities greater than FIVE HUNDRED MILLION dollars ($500,000,000.) or with operations prior to such acquisition, formation or merger materially different from those of the **Insured**, such entities will be automatically covered for a period of ninety (90) days from the date of acquisition, formation or merger, during which time the **Insured** shall provide sufficient underwriting data for us to evaluate the continuation of coverage.

    With respect to paragraphs a. and b. above, we may make an additional premium charge for any additional organizations you acquire, form or take control of during the **Policy Period**.

    It is further agreed that any newly acquired or formed entity shall only be afforded coverage under this policy if such organization is included as a named insured under **Scheduled Underlying Insurance**.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 22

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no.:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Amendment of Cancellation Notice Endorsement**
**(Amendment of Condition D)**

This policy is amended as follows:

**Section VI. Conditions,** Paragraph D.2., is hereby deleted in its entirety and replaced by the following:

2.   We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason we must mail to you, not less than one hundred twenty (120) days, advance written notice stating when the cancellation is to take effect. Mailing that notice to your mailing address, shown in Item 1 of the Declarations, will be sufficient to prove notice.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT NO.** 23

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Medical Professional Services Exclusion Endorsement**
**(With Good Samaritan Acts Exception)**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Medical Professional Services**

This insurance does not apply to any liability arising out of the rendering of,  or the failure to render, **Medical Professional Services**.

This exclusion does not apply to **Good Samaritan Acts**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Good Samaritan Acts** means those **Medical Professional  Services** performed by or on behalf of the **Insured**, without remuneration,  in rendering emergency treatment  at the scene of  an accident or medical crisis.

**Medical Professional Services** means:

1.  Furnishing  of professional  health care  services  including, but  not  limited to,  medical, surgical, dental or nursing services,

2.  Furnishing of food,  beverages, drugs, medications, supplies  or appliances in connection with professional health care services,

3.  Postmortem handling of human bodies, or

4.  Services by  any person  as a  member of  a formal  accreditation or  similar professional board or committee of  the **Insured**, or  as a person  charged with the duty  of executing directives of any such board or committee.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 24

**This endorsement, effective 12:01 AM:**   July 1, 2008

**Forms a part of policy no.:**          5443284

**Issued to:**   MCKESSON CORPORATION

**By:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**®

**Joint Venture Retained Limit Endorsement
(Scaled Limits/Scaled Attachment with Final Adjudication Adjustment)**

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.**

Solely as respects any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, and which is not otherwise covered by this policy as an **Insured**, this policy is amended as follows:

**Section IV. LIMITS OF INSURANCE,** Paragraphs F. and G. are deleted in their entireties and replaced by the following and new paragraphs N., O., P., and Q. are added:

F.       This policy applies only in excess of the **Retained Limit.**

G.       If the **Retained Limit** is reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

     1.       in the event of reduction, pay excess of: the remaining **Retained Limit**, or

     2.       In the event of exhaustion of the **Retained Limit,** continue in force as underlying insurance.

N.       In the event of any **Occurrence** caused by or arising out of any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, our Limits of Insurance under this policy shall be limited to the **Named Insured's** percentage interest in the joint venture, partnership, or limited liability company multiplied by the total applicable Limits of Insurance afforded the **Named Insured** by this policy.

     Where the percentage interest of the **Named Insured** in the joint venture, partnership, or limited liability company is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the joint venture, partnership, or limited liability company. Such percentage shall not be increased by the insolvency of others' interests in the joint venture, partnership, or limited liability company.

*Archive Copy*

**ENDORSEMENT NO.** 24 (Continued)

O.　However, upon final settlement or adjudication of the claim or **Suit**, Paragraphs F. and N. above shall no longer apply to the settled or adjudicated claim and our Limits of Insurance under this policy shall be limited to the amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim and then multiplied by the total Limits of Insurance shown in Item 3. of the Declarations.

P.　It is further agreed that our Limits of Insurance as limited by Paragraph O. above shall be excess of the greater of:

　　1.　Any Self Insured Retention applicable under the terms and conditions of this policy and its endorsements, or

　　2.　Any valid and collectible insurance issued in the name of the joint venture, partnership, or limited liability company, or

　　3.　The amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim or **Suit** and then multiplied by the applicable retained limit listed in the Schedule of Retained Limits providing coverage to the **Named Insured.**

Q.　If we indemnified the **Named Insured** for any amount based upon the terms set forth in Paragraphs F. and N. above, then:

　　1.　If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is more than the amount already paid under the requirements of Paragraphs F. and N., we will indemnify the **Named Insured** for the difference up to the amount payable under Paragraphs O. and P.

　　2.　If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is less than the amount already paid under the requirements of Paragraphs F. and N., the **Named Insured** shall reimburse us for the difference up to the amount payable under Paragraphs O. and P.

Solely for the purpose of this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusion:

　　**Joint Ventures, Partnerships, or Limited Liability Companies**

　　This insurance does not apply to any liability arising out of a joint venture, partnership, or limited liability company for any **Occurrence** that took place before the **Named Insured** acquired, joined or formed the joint venture, partnership, or limited liability company.

Solely for the purpose of this endorsement, **Section VII. DEFINITIONS,** Paragraph Z. **Retained Limit**, is deleted and replaced by the following:

**Z. Retained Limit** means:

*Archive Copy*

**ENDORSEMENT NO.** 24 (Continued)

The greater of:

   1.    Any Self Insured Retention  applicable under the terms  and conditions of this  policy
         and its endorsements, or

   2.    Any valid and collectible insurance  issued in the name  of the joint venture,
         partnership, or limited liability company, or

   3.    The **Named Insured's** percentage interest in the  joint venture, partnership, or limited
         liability company multiplied by  the applicable retained limit  listed in the Schedule  of
         Retained Limits providing coverage to the **Named Insured.**

The insurance afforded under  this endorsement shall not  be subject to  any requirement of **Section
VII.** Paragraph  M.  that a joint  venture, partnership,  or limited liability  company be shown  as a
**Named Insured** in the Declarations.

All other terms, conditions and exclusions of the policy remain unchanged.

***Archive Copy***

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 25

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**         5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Manufacturing of Drugs Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Manufacture of Drug**

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by pr on behalf of the **Insured.**

For the purpose  of this  exclusion, the  term "manufacture"  shall not  include packaging  or labeling of drugs.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT NO.**26

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Knowledge of Occurrence Endorsement**

This policy is amended as follows:

Notwithstanding any provision(s) in  this Policy to  the contrary, and  solely as respects  any loss reporting requirements under this Policy, it is understood that knowledge of an accident or incident by an agent,  servant or employee of  your or any other person  shall not in itself constitute knowledge by  you, unless  your Risk  Manager or Senior  Corporate Counsel  has received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT No.** 27

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Uninsured/Underinsured Motorists Coverage Endorsement**

**THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")**

The Declarations ITEM 3. **LIMITS OF INSURANCE** is amended to include the following additional provisions:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| x | **VERMONT** | **$100,000 Bodily Injury and Property Damage Combined Single Limit** |
|---|---|---|

And, if Uninsured/Underinsured Motorist Coverage <u>has been selected</u> under this policy:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

|  | **FLORIDA** | **Bodily Injury** |
|---|---|---|
|  | **WEST VIRGINIA** | **Bodily Injury and Property Damage Combined Single Limit** |

And, if Uninsured/Underinsured Motorist Coverage <u>has not been rejected</u> under this policy:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

|  | **GEORGIA** | **Bodily Injury and Property Damage Combined Single Limit** |
|---|---|---|
|  | **LOUISIANA** | **Bodily Injury Limit** |
|  | **NEW HAMPSHIRE** | **Bodily Injury Limit** |

**Uninsured/Underinsured Motorists Retained Limit**  $5,000,000

**INSURING AGREEMENT**

**Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** is amended to include the following additional provisions:

1.  We will pay all sums in excess of the **Uninsured/Underinsured Motorists Retained Limit** the **Insured** is legally entitled to recover as compensatory damages from the owner or operator of:

    a.  An **Uninsured Motor Vehicle** as defined in Definition 4.a., 4.b. and 4.c. of this endorsement because of **Bodily Injury** sustained by the **Insured**, or **Property Damage** and caused by an **Occurrence**, and

    b.  An **Uninsured Motor Vehicle** as defined in Definition 4.d. of this endorsement because of **Bodily Injury** sustained by any **Insured**, or **Property Damage**.

*Archive Copy*

The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle.**

2. We will pay under this coverage only if a., b., or c. below applies:

   a. The limits of any applicable liability bonds or policies of the **Uninsured Motor Vehicle** have been exhausted by judgments or payments **(Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply);**

   b. The submission of claims exceeds the limits of liability under any applicable **Bodily Injury** bonds or policies **(Applicable only where the Uninsured/Underinsured Motorists laws of Louisiana apply);** or

   c. A tentative settlement has been made between an **Insured** and the insurer of the vehicle described in paragraph b. of the definition of **Uninsured Motor Vehicle** of this endorsement and we:

      1) Have been given prompt written notice of such settlement; and

      2) Advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days **(30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** after receipt of notification.

3. Any judgment for damages arising out of a **Suit** brought without our written consent is not binding upon us **(Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)**.

**DEFENSE**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section III. DEFENSE PROVISIONS** is hereby deleted in its entirety and replaced by the following:

1. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** or **Property Damage** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the **Uninsured/Underinsured Motorists Retained Limit** has been exhausted by payment of **Loss** to which this policy applies.

   If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

2. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

3. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

   a. Investigate, negotiate and settle the **Suit** as we deem expedient; and

   b. Pay the following supplementary payments:

      1) premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

      2) premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

      3) all court costs taxed against the **Insured** in the **Suit**;

Archive Copy

4)  pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

5)  post-judgment interest that accrues after entry of judgment on that part of the judgement within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

6)  the **Insured's** expenses incurred at our request or with our consent.

4.  Except as provided in Paragraph 1. above, we will have no duty to defend any **Suit** against the **Insured.** We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

5.  We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph 3. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## LIMITS OF INSURANCE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section IV. LIMITS OF INSURANCE** is amended to include the following additional provisions:

1.  Regardless of the number of covered **Autos**, **Insureds**, premiums paid, claims made or vehicles involved in the **Occurrence**, the most we will pay for all damages resulting from any one **Occurrence** are the Limits of Insurance shown in Item 3. of the Declarations (as amended in this endorsement).

2.  With respect to coverage provided under Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**, the Limit of Insurance shall be reduced by all sums paid for **Bodily Injury** or **Property Damage** by or on behalf of anyone who is legally responsible.

3.  **Uninsured/Underinsured Motorists Retained Limit**

This policy applies only in excess of an **Uninsured/Underinsured Motorists Retained Limit** and then up to an amount not exceeding the Uninsured/Underinsured Motorists Each Occurrence Limit as stated in the Declarations (as amended in this endorsement), subject to the provisions stated in 1. and 2. above.

The **Uninsured/Underinsured Motorists Retained Limit** shall not be reduced or exhausted by **Defense Expenses**.

Where the Uninsured/Underinsured laws of the state of West Virginia apply, this **Uninsured/Underinsured Motorists Retained Limit** applies excess of the statutory minimum amount of Uninsured Motorists Coverage provided by an underlying insurer.

## EXCLUSIONS

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS**, Exclusion O. is deleted in its entirety and replaced by the following:

O.  **"No-Fault" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No Fault" law.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusions:

1. This insurance does not apply to any claim settled without our consent.  However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an **Uninsured Motor Vehicle**.

2. This insurance does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. This insurance does not apply to any **Insured** using a vehicle without the expressed or implied permission of the owner or lessee.

4. This insurance does not apply to **Bodily Injury** or **Property Damage** sustained by:

   a. An individual **Named Insured** while **Occupying** or when struck by any vehicle owned by that **Named Insured** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement;

   b. Any **Family Member** while **Occupying** or when struck by any vehicle owned by that **Family Member** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement; or

   c. Any **Family Member** while **Occupying** or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage under any other policy.

5. This insurance does not apply to punitive or exemplary damages.

6. This insurance does not apply to **Property Damage** to an **Auto** or to property contained in an **Auto** owned by the **Named Insured** which is not a covered **Auto**.

7. This insurance does not apply to **Property Damage** for which the **Insured** has been or is entitled to be compensated by other property or physical damage insurance.

## CONDITIONS

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition L. **Other Insurance** under **Section VI. CONDITIONS** is deleted in its entirety and replaced by the following:

L. **Other Insurance**

Any insurance we provide under this endorsement will be excess to the total limits of any **Other Insurance** paid or available for payment to an **Insured**, except other applicable Uninsured/Underinsured Motorist Coverage written to be excess of this policy.

If there is other applicable Uninsured/Underinsured Motorist Coverage under any other policy issued to the **Named Insured** by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one policy.

If there is other applicable excess Uninsured/Underinsured Motorist Coverage available under more than one policy, then the following priorities of coverage apply:

1. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as a **Named Insured**.

2. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as an **Insured** other than as a **Named Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*

3. A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as a **Named Insured**.

4. A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an **Insured** other than as a **Named Insured**.

We will pay only our share of the **Loss** that must be paid under insurance providing umbrella or excess coverage.  Our share is the proportion that our limit of liability bears to the total of all applicable limits of all the policies applicable on the same level of priority.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition G. **Duties In the Event of an Occurrence, Claim Or Suit** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

G. Specifically as respects to any **Occurrence** which may result in a Uninsured/Underinsured Motorist claim for coverage under this policy:

a. You must promptly notify the police if a hit-and-run driver is involved, and

b. You must promptly send us copies of the legal papers if a **Suit** is brought.

c. A person seeking Uninsured/Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the **Insured** and the insurer of the vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**  and allow us 90 days **(30 days where the Uninsured/ Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** to advance payment to that **Insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition P. **Transfer of Your Rights and Duties** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

P. If we make any payment and the **Insured** recovers from another party, the **Insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, where the Uninsured/Underinsured laws of the state of Louisiana apply, if we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right.  However, our right to recover is subordinate to the right of the **Insured** to be fully compensated.

Our rights do not apply under this provision with respect to Uninsured/Underinsured Motorists Coverage if we:

a. Have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of a vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**; and

b. Fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days **(30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** after receipt of notification.

If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days **(30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** after receipt of notification:

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

    a.   That payment will be separate from any amount the **Insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

    b.   We also have a right to recover the advanced payment.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VI. CONDITIONS** is amended to include the following additional conditions:

**Arbitration (Not applicable where the Uninsured/Underinsured laws of West Virginia or Louisiana apply)**

1.   If we and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Insured**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to the arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

2.   Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**Conformance to "Uninsured Motorist" and/or "Underinsured Motorist" Law**

To the extent any term of this policy conflicts with any applicable Uninsured/Underinsured law, the term shall be deemed amended so as to conform to minimum requirements of that law. However, under no such circumstance shall any term be amended to be broader than the minimum requirements of that law.

**DEFINITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition M. **Insured** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

M.  **Insured** means:

    If the **Named Insured** is designated in the Declarations as:

    a.   An individual, then only the following are **Insureds**:

        1)   The **Named Insured** and any **Family Members**.

        2)   Anyone else occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction.

        3)   Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

    b.   A partnership, limited liability company, corporation or any other form of organization, then the following are **Insureds**:

        1)   Anyone occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction;

        2)   Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition Y. **Property Damage** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

Y.   **Property Damage** means:

Physical Injury or destruction of:

a.   A covered **Auto**; or

b.   Property contained in the covered **Auto**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

1.   **Defense Expenses** means a payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

a.   Attorneys' fees and all other investigation, **Loss** adjustment and litigation expenses;

b.   Premiums on bonds to release attachments;

c.   Premiums on appeal bonds required by law to appeal any claim or **Suit**;

d.   Costs taxed against the **Insured** in any claim or **Suit**;

e.   Pre-judgment interest awarded against the **Insured**; and

f.   Interest that accrues after entry of judgment.

2.   **Family Member** means a person related to an individual **Named Insured** by blood, marriage or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

3.   **Occupying** and/or **Occupied** means in, upon, getting in, on, out or off.

4.   **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

a.   For which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged;

b.   Which is an **Underinsured Motor Vehicle**.   An **Underinsured Motor Vehicle** means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage **(Not Applicable where the Uninsured/Underinsured laws of West Virginia apply)**;

c.   For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d.   That is a hit-and-run vehicle and neither the operator nor owner can be identified.   The vehicle must either:

1)   Hit an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**; or

2)   Cause **Bodily Injury** to an **Insured** without hitting an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**.

82610 (2/07)                                                                                                      Page 7 of 8
AH2083              Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the **Insured** making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

However, **Uninsured Motor Vehicle** does not include any vehicle:

a.  Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.  However, where the Uninsured/Underinsured laws of the state of Florida apply, Uninsured Motor Vehicle includes any vehicle owned or operated by a self-insurer under any applicable motor vehicle law;

b.  Designed for use mainly off public roads while not on public roads;

c.  Owned by or furnished or available for the **Named Insured's** regular use or that of any **Family Member**, if the **Named Insured** is an individual; or

d.  Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

    1)  An immunity under applicable tort liability law; or

    2)  A diplomatic immunity.

5.  **Underinsured Motor Vehicle** means a land motor vehicle or trailer to which a liability bond or policy applies at the time of the **Occurrence** but the amount paid for **Bodily Injury** or **Property Damage** to an **Insured** under that bond or policy is not enough to pay the full amount the **Insured** is legally entitled to recover as damages.

    However **Underinsured Motor Vehicle** does not include any vehicle or trailer:

    a.  Owned or operated by a self-insurer under any applicable motor vehicle law;

    b.  Owned by a governmental unit or agency; or

    c.  Designed for use mainly off public roads while not on public roads.

    **(Definition 5. above only applicable where the Uninsured/Underinsured Motorist laws of West Virginia apply)**

6.  **Uninsured/Underinsured Motorists Retained Limit**, as specified in the Declarations above, means either:

    a.  the **Auto** liability limit as provided by a policy listed in Scheduled Underlying Insurance; or

    b.  the **Auto** liability Retained Limit as listed in the Schedule of Retained Limits.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*