GRETCHEN A. HOFF VARNER (Bar No. 284980)
SYLVIA HUANG (Bar No. 313358)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
ghoffvarner@cov.com; syhuang@cov.com

ANNA ENGH (*pro hac vice*)
SHANNON TUCKER (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com; srtucker@cov.com

DAVID LUTTINGER (*pro hac vice*)
CLÉA P.M. LIQUARD (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant, Counterclaim Plaintiff, Third Party Plaintiff, and Third Party Counterclaim Defendant McKesson Corporation*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO**

| | |
|---|---|
| AIU INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v. | Civil Case Nos.: 3:20-cv-07469-JSC<br>3:20-cv-09356-JSC<br><br>**DECLARATION OF CLÉA P.M. LIQUARD IN SUPPORT OF McKESSON'S MOTION TO STAY DISCOVERY AND PROCEEDINGS** |

McKESSON CORPORATION f/k/a
MCKESSON HBOC, INC.,

    Defendant, Counterclaim Plaintiff, Third
Party Plaintiff, and Third Party
Counterclaim Defendant,

         v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY,

    Third Party Defendant and Third Party
Counterclaim Plaintiff.

I, Cléa P.M. Liquard, declare as follows:

1.    I am an attorney at Covington & Burling LLP ("Covington") and counsel of record for McKesson Corporation ("McKesson").  I submit this declaration in support of McKesson's Motion to Stay Discovery and Proceedings.  Unless otherwise stated, the matters set forth herein are true and correct of my own personal knowledge, and if called as a witness I could and would testify competently thereto.

2.    McKesson has been named as a defendant in more than 3,200 lawsuits pending in federal and state courts around the country, brought by governmental entities and others (the "Opioid Lawsuits"). The Opioid Lawsuits seek to hold McKesson liable for damages for, among other things, the costs of medical care, response costs, and treatment costs for opioid-related bodily injuries allegedly arising out of McKesson's allegedly improper distribution of prescription opioid pharmaceutical products.

3.    The first such Opioid Lawsuit, *State of West Virginia ex rel. Patrick Morrisey et al. v. McKesson Corp.*, No. 16-C-1 (Cir. Ct. Boone Cnty, W. Va.) (the "West Virginia AG Lawsuit"), was filed against McKesson in January 2016.  On February 8, 2016, McKesson, through Marsh Risk Consulting ("Marsh"), tendered the opioid claims therein for defense and indemnity to its insurers under any and all applicable policies.  Attached as **Exhibit A** is a true and correct copy of Marsh's February 8, 2016 letter (omitting that letter's attachment of the underlying complaint).

4.    McKesson has continued to report new Opioid Lawsuits to National Union Fire Insurance Company of Pittsburgh, Pa., AIU Insurance Company (together or separately, "AIG") and ACE Property and Casualty Insurance Company ("ACE") (AIG and ACE together, "Insurers") on an ongoing basis as

2

DECLARATION OF CLÉA P.M. LIQUARD IN SUPPORT OF McKESSON'S MOTION TO STAY DISCOVERY
AND PROCEEDINGS, Case Nos.: 3:20-cv-07469-JSC; 3:20-cv-09356-JSC

the lawsuits are filed against McKesson.  To date, Insurers have failed and refused to defend against the Opioid Lawsuits, have not acknowledged an obligation to defend the suits, and have not reimbursed McKesson for any defense costs incurred in defending against the suits.

5.     On October 27, 2017, Cuyahoga County, Ohio filed an opioid lawsuit against McKesson captioned *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No. 17-OP-45004 (N.D. Ohio) (the "*Cuyahoga* action").  Marsh, on behalf of McKesson, tendered the *Cuyahoga* action to AIG and ACE for defense and indemnity on December 1, 2017.  Attached as **Exhibit B** is a true and correct copy of Marsh's December 1, 2017 letter.  A copy of the Third Amended Complaint in the *Cuyahoga* action is attached as Exhibit E to the Brigman Declaration in support of McKesson's Motion for Partial Summary Judgment on the Duty to Defend (AIG Action, Dkt. 79-12).

6.     On December 5, 2017, the United States Judicial Panel on Multidistrict Litigation created a multidistrict litigation for consolidated pretrial proceedings of the Opioid Lawsuits (the "Opioid MDL").  *See In re: Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017).  The Opioid MDL, captioned *In Re: National Prescription Opiate Litigation*, Case No. 1:17-md-02804-DAP, was assigned to and is currently pending before Judge Polster in the United States District Court for the Northern District of Ohio.  Thousands of lawsuits have been transferred to the Opioid MDL, some have subsequently been remanded back to the transferor federal courts for further proceedings, and about 350 remain pending in state court.  In total, McKesson is defending Opioid Lawsuits in more than 100 courts across the country.

7.     On December 20, 2017, Summit County, Ohio filed an opioid lawsuit against McKesson captioned *County of Summit, Ohio v. Purdue Pharma L.P. et al.*, Case No. 18-OP-45090 (N.D. Ohio) (the "*Summit* action").  On behalf of McKesson, Marsh tendered the *Summit* action to AIG and ACE for defense and indemnity on December 29, 2017.  Attached as **Exhibit C** is a true and correct copy of Marsh's December 29, 2017 letter.  A copy of the Third Amended Complaint in the *Summit* action is attached as Exhibit G to the Brigman Declaration in support of McKesson's Motion for Partial Summary Judgment on the Duty to Defend (AIG Action, Dkt. 79-14).

8.     On April 11, 2018, Judge Polster identified certain cases as "Track One" bellwether lawsuits in the Opioid MDL, including the *Summit* and *Cuyahoga* actions (together, the "Track One Lawsuits"), and on February 25, 2019, Judge Polster prioritized the Track One Lawsuits for trial.

9.      On or around May 1, 2019, McKesson and the State of West Virginia agreed to settle the West Virginia AG Lawsuit, and the plaintiff's claims against McKesson were consequently dismissed with prejudice.

10.     On or about October 21, 2019, McKesson and the Track One plaintiffs agreed to settle the Track One Lawsuits.   The plaintiffs' claims against McKesson were consequently dismissed with prejudice.

11.     More than 95 Opioid Lawsuits brought by West Virginia claimants remain pending against McKesson.

12.     Two such lawsuits, brought by West Virginia political subdivisions Cabell County and City of Huntington, were remanded from the Opioid MDL to the U.S. District Court for the Southern District of West Virginia for further proceedings (the "Cabell County/Huntington Lawsuit").

13.     Trial began in the Cabell County/Huntington Lawsuit on May 3, 2021 in Charleston, West Virginia and is expected to continue through August 2021.

14.     At least 140 Opioid Lawsuits brought by Ohio entities and political subdivisions remain pending against McKesson.

15.     One such lawsuit, brought by the State of Ohio, is scheduled to begin trial in September 2021 (the "Ohio AG Lawsuit").

16.     Apart from these pending and ongoing trials, McKesson is a defendant in at least four other Opioid Lawsuits that are currently scheduled to begin trial in 2021 alone, with at least a dozen other trials in other Opioid Lawsuits scheduled for 2022 and 2023.  For example, Opioid Lawsuits proceeding in New York state court are scheduled to begin jury selection on June 8, 2021.

17.     Discovery generated in the Track One Lawsuits has been reproduced in numerous Opioid Lawsuits that are being actively litigated and defended, and discovery from non-MDL Opioid Lawsuits is likewise regularly reproduced into the MDL.  The discovery undertaken in the Track One Lawsuits was wide-ranging and involved, for example, information about McKesson's controlled substance monitoring policies and procedures generally, and included numerous document custodians with national or regional roles that go far beyond the counties involved in the Track One Lawsuits.

18.     Any one of the thousands of Opioid Lawsuits pending against McKesson could present significant financial exposure to McKesson.

19.     On October 23, 2020, AIG filed the instant coverage litigation, No. 3:20-cv-07469-JSC, against McKesson.

20.     On November 2, 2020, ACE filed the instant coverage litigation, No. 3:20-cv-09356-JSC, against McKesson.

21.     McKesson filed a motion for partial summary judgment in the instant coverage litigation on April 30, 2021, seeking a declaration that AIG and ACE each owe McKesson a duty to defend against the Opioid Lawsuits.

22.     Shortly before McKesson filed its motion, ACE propounded a First Set of Requests for Production on McKesson on March 25, 2021, seeking discovery of materials from the Opioid Lawsuits. Attached hereto as **Exhibit D** is a true and correct copy of ACE's First Set of Requests for Discovery and Production of Documents to McKesson Corporation.

23.     Further, on May 14, 2021, National Union and ACE jointly propounded a list of six categories of documents they seek purportedly "in connection with McKesson's motion for partial summary judgment" on the duty to defend (the "Joint Requests for Production").  Insurers contend they are entitled to the materials outlined in the Joint Requests for Production because the materials "relate to one or more of the questions put at issue by McKesson in its motion for partial summary judgment." Attached hereto as **Exhibit E** is a true and correct copy of the May 14, 2021 Joint Requests for Production.

24.     In Categories 1-3 of Insurers' Joint Requests for Production, Insurers seek certain written and deposition discovery materials from the Track One and West Virginia AG Lawsuits that McKesson previously provided to AIG in 2019.  The first tranche of these discovery materials was provided to AIG on January 29, 2019, the second tranche on March 26, 2019, and the third tranche on April 15, 2019.  A subset of these materials was also provided to ACE in March 2019.  All discovery materials were provided subject to the protective orders entered in the Track One and/or West Virginia AG Lawsuits, as well as the parties' confidentiality agreements, all of which protect the confidential nature of the materials.

25.     McKesson provided the materials identified in Categories 1-3 to AIG with the understanding that AIG had not yet made a coverage determination and was requesting additional materials in good faith as necessary to consider McKesson's coverage claim.

26.     Indeed, AIG's counsel repeatedly indicated to McKesson's counsel that AIG was interested in a potential commercial resolution of McKesson's coverage claims, and in that regard requested what amounted to tens of thousands of pages of material from the underlying Opioid Lawsuits as part of its purported ongoing dialogue toward such a resolution.

27.     AIG continued this purported investigation for nearly five years before filing the instant coverage action against McKesson in October 2020.  At no point during that near-five-year period did AIG acknowledge its defense obligations or pay any amounts toward McKesson's defense costs.

28.     Insurers' Joint Requests for Production request deposition transcripts of fact and expert witnesses who are testifying in ongoing trial right now, such as Michael Oriente, *see* **Exhibit E** at 21, who was deposed as a McKesson witness in the Track One Lawsuits and was called as a witness by plaintiffs in the Cabell County/Huntington Lawsuit trial on May 24 and May 25, 2021.

29.     Similarly, Insurers request the deposition transcript and expert reports from plaintiffs' experts Dr. Craig McCann and James Rafalski, *see* **Exhibit E** at 25–26, both of whom testified in the Track One Lawsuits as plaintiffs' proffered experts and both of whom testified against McKesson in the ongoing Cabell County/Huntington trial—Dr. McCann on May 10–May 12, 2021, and James Rafalski on May 26 and May 27, 2021.

30.     These and numerous other fact and expert witnesses from the Track One and West Virginia AG Lawsuits have been or may be identified as witnesses to testify in one or more of the five other trials McKesson is facing this year alone.

31.     McKesson has already provided Insurers with evidence sufficient to demonstrate exhaustion of the policies' $5 million self-insured retention, including, among other things, (a) excerpts of McKesson's financial records from 2016 to 2021 detailing attorneys' fees and expenses paid by McKesson in the hundreds of millions of dollars to defend against the Opioid Lawsuits, in sortable Excel format, (b) thousands of pages of defense invoices, amounting to tens of millions of dollars in defense costs, submitted to and paid by McKesson for defense counsel's work in defending McKesson against the

Opioid MDL for the period January 1, 2018 through October 31, 2019, and (c) the declaration of James R. Brigman, McKesson's Senior Vice President of General Counsel Organization Operations, in Support of McKesson's Motion for Partial Summary Judgment on The Duty to Defend, which provides additional information regarding McKesson's defense costs.  The Brigman Declaration, a true and correct copy of which is attached hereto as **Exhibit F**, confirms that McKesson's outside counsel notified Insurers as early as August 31, 2018 that McKesson had received defense invoices totaling approximately $25 million in connection with the Opioid Lawsuits.  McKesson has also agreed to a deposition of a witness to testify on the defense costs incurred as described in the Brigman Declaration.

32.     McKesson has provided robust discovery to Insurers in this coverage litigation, including: copies of the thousands of operative underlying complaints; an index listing the docket numbers, case caption, and jurisdiction of the thousands of Opioid Lawsuits naming McKesson and/or subsidiaries of McKesson as defendants; copies of general/product liability insurance policies issued to McKesson by other insurers from 1999 through 2017; and copies of litigation and defense cost updates to Insurers.

33.     I declare under penalty of perjury under the laws of the United States that the foregoing declaration is true and correct.

DATED: June 4, 2021                          */s/ Cléa P.M. Liquard*
New York City, New York                      Cléa P.M. Liquard

DECLARATION OF CLÉA P.M. LIQUARD IN SUPPORT OF McKESSON'S MOTION TO STAY DISCOVERY AND PROCEEDINGS, Case Nos.: 3:20-cv-07469-JSC; 3:20-cv-09356-JSC