UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIU INSURANCE COMPANY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MCKESSON CORPORATION,<br><br>Defendant. | Case No. 20-cv-07469-JSC<br><br>**ORDER RE: MOTION TO STAY DISCOVERY AND PROCEEDINGS**<br><br>Re: Dkt. No. 93 |

Before the Court is McKesson's motion to stay discovery and proceedings in this insurance coverage dispute action.[1] (Dkt. No. 93.)[2] The insurers oppose the motion. (Dkt. No. 94.) Having carefully considered the parties' briefing, and having had the benefit of oral argument on August 12, 2021, the Court GRANTS in part and DENIES in part the motion. Discovery relevant only to the indemnity issue is stayed; however, some of the discovery Insurers seek is relevant to their defense to the duty to defend motion. That limited relevant discovery is not stayed.

## BACKGROUND

McKesson is a distributor and seller of prescription drugs. Since 2016, McKesson has been named as defendant in thousands of lawsuits around the country related to the opioid crisis ("Opioid Lawsuits"). The Opioid Lawsuits generally allege that McKesson failed to monitor, detect, investigate, refuse, report, and halt suspicious orders of prescription opiates, and knew or should have known that its distribution was causing serious harm in the form of addictions and

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 18, 31.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  deaths.  McKesson held a number of liability insurance policies with Insurers between 1999 and
2  2017.  In this action, Insurers seek a declaratory judgment they are not obligated to defend or
3  indemnify McKesson against the Opioid Lawsuits.  (Dkt. No. 1 at 9–10; Dkt. No. 45 at 22–23.)
4  McKesson seeks a declaratory judgment that Insurers are so obligated, and that they have
5  breached the relevant insurance contracts on the duties to defend and indemnify.  (Dkt. No. 9 at
6  17–20.)

7       On April 30, 2021, McKesson moved for partial summary judgment on its claim for
8  declaratory judgment that Insurers have a duty to defend.  (Dkt. No. 79.)  The Court stayed
9  Insurers' opposition to the motion.  (Dkt. No. 81.)  Thereafter, McKesson filed the instant motion
10  to stay.  (Dkt. No. 93.)  Specifically, McKesson seeks to stay "all discovery and proceedings at
11  this stage in the litigation *other than* McKesson's pending motion for partial summary judgment
12  on the duty to defend and the limited discovery relevant to deciding that motion (*viz.*, the
13  insurance policies, underlying complaints, and evidence of defense costs sufficient to satisfy the
14  $5 million self-insured retention)."  (*Id.* at 7 (emphasis added).)  Insurers argue the requested stay
15  should be denied, or, alternatively, Insurers do not oppose a stay of the entire action, including
16  McKesson's motion for partial summary judgment.  (Dkt. No. 94 at 7–8.)

17       **DISCUSSION**

18  **I.    Motion to Stay Standard**

19       Federal procedural law governs the motion to stay.  In a diversity action like this one, (*see*
20  Dkt. No. 1 ¶ 15; Dkt. No. 9 ¶ 6), federal courts apply federal procedural law and state substantive
21  law.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The issue whether to grant a stay is
22  procedural; authority to do so derives not from the underlying substantive law, but from the
23  Court's "inherent power to control the disposition of the causes on its docket in a manner which
24  will promote economy of time and effort for itself, for counsel, and for litigants."  *CMAX, Inc. v.*
25  *Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55
26  (1936)); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ("A district court has
27  discretionary power to stay proceedings in its own court[.]"); *see Zurich Am. Ins. Co. v. Omnicell,*
28  *Inc.*, 2019 WL 570760, at *2–4 (N.D. Cal. Feb. 12, 2019) (analyzing choice of law in California

United States District Court
Northern District of California

1  insurance dispute and citing cases applying federal procedural law). "A trial court may, with
2  propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay
3  of an action before it, pending resolution of independent proceedings which bear upon the
4  case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule
5  applies whether the separate proceedings are judicial, administrative, or arbitral in character, and
6  does not require that the issues in such proceedings are necessarily controlling of the action before
7  the court." *Id.*

8      The cases McKesson cites in support of its argument that California procedural law
9  controls are unpersuasive or distinguishable. *Atain Specialty Ins. Co. v. 20 Parkridge, LLC*, 2015
10 WL 2226356, at *5 (N.D. Cal. May 11, 2015) (relying on *U.S. Fidelity & Guar. Co. v. Lee Invs.
11 LLC*, 641 F.3d 1126, 1133–34 (9th Cir. 2011), in which no stay was requested or at issue); *see
12 Travelers Prop. Cas. Co. of Am. v. Salesforce.com, Inc.*, 2021 WL 1376575, at *1 (N.D. Cal. Apr.
13 13, 2021) (dicta); *Phila. Indem. Ins. Co. v. Skating Edge, Inc.*, 2018 WL 5099705, at *2 (C.D. Cal.
14 May 24, 2018) (citing *Atain Specialty*); *Colony Ins. Co. v. Vantaggio Farming Corp.*, 2017 WL
15 3478998, at *5 (E.D. Cal. Aug. 14, 2017) (applying California law without choice of law
16 analysis); *Stonington Ins. Co. v. Adams*, 2017 WL 3009206, at *3 (E.D. Cal. July 14, 2017)
17 (applying California law, but in the context of "a federal district court's power to control its
18 docket" and "broad discretion"); *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, 2015 WL
19 2265900, at *2 (N.D. Cal. May 14, 2015) (applying California law without choice of law
20 analysis); *Sleeping Well, LLC v. Travelers Indem. Co.*, 2011 WL 996202, at *1 (N.D. Cal. Mar.
21 21, 2011) (same).

22     *Landis* articulates the federal procedural law governing stays. 299 U.S. at 254–55.
23 "Where it is proposed that a pending proceeding be stayed, the competing interests which will be
24 affected by the granting or refusal to grant a stay must be weighed." *CMAX*, 300 F.2d at 268. In
25 weighing the competing interests, courts consider the three *Landis* factors: (1) "the possible
26 damage which may result from the granting of a stay," (2) "the hardship or inequity which a party
27 may suffer in being required to go forward," and (3) "the orderly course of justice measured in
28 terms of the simplifying or complicating of issues, proof, and questions of law which could be

expected to result from a stay." *Id.* The first and second factors are interrelated, as the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

Although California procedural law does not control, it bears on the *Landis* framework. *See Zurich*, 2019 WL 570760, at *4–6. Thus, California cases articulating the hardship or inequity that an insured may suffer from being required to go forward in an action like this inform the Court's analysis of the second *Landis* factor. *See Montrose Chem. Corp. of Cal. v. Superior Court* (*Montrose I*), 861 P.2d 1153 (Cal. 1993) (in bank); *Riddell, Inc. v. Superior Court*, 222 Cal. Rptr. 3d 384 (Cal. Ct. App. 2017); *Haskel, Inc. v. Superior Court*, 39 Cal. Rptr. 2d 520 (Cal. Ct. App. 1995); *Montrose Chem. Corp. of Cal. v. Superior Court* (*Montrose II*), 31 Cal. Rptr. 2d 38 (Cal. Ct. App. 1994). California law recognizes that liability insurance disputes create a significant risk of prejudicing the insured in underlying lawsuits. "To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose I*, 861 P.2d at 1162. The closer the nexus between the insurance policy coverage questions (at issue between the insurer and insured) and the liability questions (at issue between the insured and third parties), the greater the rationale for a stay. *Id.* Prejudice to the insured may take at least three forms:

> When the courts talk about prejudice to the insured from concurrent litigation of the declaratory relief and third party actions, they are saying, in effect, that the insurer must not be permitted to join forces with the plaintiffs in the underlying actions as a means to defeat coverage. Another sort of prejudice occurs when the insured is compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money
>
> and its human resources to litigating coverage issues with its carriers. And, of course, there is the collateral estoppel issue. If the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage.

*Montrose II*, 31 Cal. Rptr. 2d at 43.

4

## II. MCKESSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND

Because McKesson seeks a stay except for its pending motion for partial summary judgment, (Dkt. No. 79), the stay analysis implicates the pending summary judgment motion.

The motion focuses on two insurance policies and three "exemplar" Opioid Lawsuits, seeking a declaratory ruling that Insurers have a duty to defend the exemplar suits and all similarly pled Opioid Lawsuits. (*Id.* at 8.) The exemplar suits are the two "Track One Lawsuits" brought by Cuyahoga County, Ohio and Summit County, Ohio, and the suit brought by the Attorney General of Oklahoma. (*Id.* at 8 nn.3–4.) At the Court's direction, the parties met and conferred regarding any discovery that Insurers contend they need to oppose McKesson's motion. (*See* Dkt. No. 82 at 3.) Insurers requested six categories of documents. (Dkt. No. 82-1.) After producing some of the documents, McKesson moved to stay, and argues that no further discovery is necessary or relevant to decide the motion for partial summary judgment on the duty to defend.

### A. Categories 1-3

Categories 1-3 are:

> 1. Selected Written Discovery Served on McKesson in Track One Cases and West Virginia AG Case and McKesson's Responses, previously produced by McKesson[;]
>
> 2. Selected Written Discovery Served on Plaintiffs in Track One Cases and West Virginia AG Case and Plaintiffs' Responses, previously produced by McKesson[; and]
>
> 3. Transcripts of Depositions, including exhibits, of Certain Witnesses from Various Plaintiffs, Defendants (not including McKesson), and Third Parties, previously produced by McKesson[.]

(Dkt. No. 82-1 at 2.) According to Insurers, the documents in Categories 1-3 are already in their possession, but subject to a confidentiality agreement with McKesson that predates this litigation. (Dkt. No. 94 at 6–7.) Thus, the request for Categories 1-3 is for McKesson's permission for Insurers to share those documents with the Court, subject to the stipulated protective order as appropriate, (Dkt. No. 91), in connection with an opposition to the motion for partial summary judgment. (Dkt. No. 94 at 17–18.)

The central dispute is whether these documents can be relevant to the duty to defend. According to McKesson, the duty depends on what Insurers knew "at the inception" of the

5

underlying Opioid Lawsuits; because all the documents in Categories 1-3 were generated in the Opioid Lawsuits, they are irrelevant to Insurers' duty to defend. *See Haskel, Inc. v. Superior Court*, 39 Cal. Rptr. 2d 520, 527 (Cal. Ct. App. 1995) ("The insurers were either aware of such evidence at the time of the tender [of defense] or they were not; they did not need discovery from [insured] to determine the existence of that evidence."). However, that is not the standard for excess, as opposed to primary, insurers. *See id.* at 523 n.4 ("Some of the policies issued by some of the insurers are actually excess policies; as to those policies, there is no dispute that a duty to provide a defense for [insured] would not exist until there has been exhaustion of the primary policies or the excess insurer is otherwise required to 'drop down' and provide coverage. The resolution of this potential dispute between [insured] and its excess insurers is not before us." (citation omitted)). *Cf. Aetna Cas. & Sur. Co. v. Certain Underwriters*, 129 Cal. Rptr. 47 (Cal. Ct. App. 1976) (holding that primary insurer's duty to defend ended when excess insurers' duty arose). According to Insurers, the relevant standard is what they knew at the time they "acquired the duty." *See Saylin v. Cal. Ins. Guarantee Ass'n*, 179 Cal. App. 3d 256, 264 (1986). Because they are excess and not primary insurers, they acquire a duty at the point when the retention is exhausted, not at the inception of the underlying litigation.

The parties also dispute whether extrinsic evidence, outside of the insurance policies and the Opioid Lawsuits complaints, may be considered in evaluating the duty to defend. Under California law, an insurer can "rely on facts known to it, which were extraneous to the allegations in the complaint, to defeat its duty to provide a defense [if] such facts [are] *undisputed* and [] *conclusively* demonstrate that there was no *potential* for coverage." *Haskel*, 39 Cal. Rptr. 2d at 526 (emphasis in original); *see Montrose I*, 861 P.2d at 1159–62. Thus, the documents in Categories 1-3 may or may not be permissible extrinsic evidence, depending on their contents and the conclusions that flow therefrom.

Applying the *Landis* factors to Categories 1-3, on balance a stay is not warranted. The requested stay will create some prejudice to Insurers by "hamstring[ing]" their ability to defend themselves against McKesson's motion for partial summary judgment. (Dkt. No. 94 at 28.) As to the second factor, Categories 1-3 will not put Insurers in a position to join forces with the

6

plaintiffs in the underlying actions. The Opioid Lawsuits plaintiffs already possess the Categories 1-3 documents (as do Insurers), such that Insurers' use of the documents will not meaningfully aid the plaintiffs in their ongoing litigation. McKesson's concern about fighting a two-front war has some merit, but it opened one front by filing the motion for partial summary judgment. The request for Categories 1-3 is narrow in scope. McKesson merely needs to give permission for Insurers to use documents they already have. The presence of Categories 1-3 documents in this action and the Opioid Lawsuits will not prejudice McKesson by having to advance two contrary legal arguments; it will more likely oppose the relevance of the documents on similar grounds in both litigations. *See RLI Ins. Co. v. ACE Am. Ins. Co.*, 2020 WL 1322955, at *5–6 (N.D. Cal. Mar. 20, 2020) (identifying prejudice to insured in "Hobson's choice"). To the extent the documents are relevant to the duty to defend, McKesson's early motion for partial summary judgment put those documents at issue. *Cf. Hanover Ins. Co. v. Mason McDuffie Real Est., Inc.*, No. 16-CV-01114-JST, 2016 WL 7230868, at *3 (N.D. Cal. Dec. 14, 2016) ("[T]hat prejudice depends on [insurer] prevailing in the Instant Action [i.e., owing no duty to defend or indemnify], an issue the Court has not yet reached."). To the extent they are not relevant or the Court may not consider them as a matter of law, McKesson will not have been meaningfully prejudiced by giving permission for Insurers to use those documents in their opposition.

On the third *Landis* factor, staying discovery as to Categories 1-3 will not contribute to the orderly course of justice because McKesson seeks for the Court to promptly resolve its motion for partial summary judgment on the duty to defend. Thus, the Opioid Lawsuits will not "contribute to the decision of[] the factual and legal issues" before the Court; rather, McKesson simply wants to resolve the duty to defend without potentially relevant discovery. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005) (holding stay improper in circumstances that include where the ongoing proceeding "is unlikely to decide, or to contribute to" the issues before the court).

In sum, given the potential relevance to the duty to defend and the at best balanced *Landis* factors, discovery as to Categories 1-3 is not stayed.

### B. Categories 4-5

Categories 4-5 are:

>4. Transcripts of Depositions, including exhibits, of McKesson Fact Witnesses in Track One Cases and West Virginia AG Case[; and]
>
>5. Expert Reports and Transcripts of Depositions, including exhibits, of Certain Expert Witnesses[.]

(Dkt. No. 82-1 at 2.) According to Insurers, the documents in Categories 4-5 are already in their possession because they are "publicly available on various court dockets," although in "partially redacted" form. (Dkt. No. 94 at 14.) The request for Categories 4-5 is for McKesson to produce unredacted versions "so that the Insurers and, if warranted, the Court can see the full context in analyzing them." (*Id.*)

While extrinsic evidence may be permitted to defeat the duty to defend, as discussed above, such evidence must be "facts known to" Insurers. *See Haskel, Inc. v. Superior Court*, 39 Cal. Rptr. 2d 520, 526 (Cal. Ct. App. 1995). The unredacted Categories 4-5 documents are by definition not known to Insurers (presently or at any time predating the litigation), and Insurers have not demonstrated how they might be otherwise relevant to the duty to defend issue. The documents may be relevant to indemnity to the extent they show whether and when McKesson had knowledge about the harms its opiates distribution allegedly caused, but Insurers have not explained how they are relevant at the pending motion regarding the duty to defend. The Court is not persuaded by their oral argument "context" argument. Therefore, discovery as to Categories 4-5 is stayed.

### C. Category 6

Category 6 is:

>Documents, including, but not limited to, bills and invoices, relating to the $60 million in attorneys' fees and expenses McKesson alleges it paid to defend against the Track One Cases; as well as a deposition of a McKesson corporate representative who is able to provide testimony regarding the fees and expenses McKesson alleges it paid.

(Dkt. No. 82-1 at 2.) Insurers state that the Category 6 documents "are not at issue in the Motion to Stay," although the basis for that is not clear. (Dkt. No. 94 at 18.) McKesson produced some Category 6 documents, but not all responsive documents that Insurers seek; the parties continue to meet and confer on Category 6 production. (*Id.* at 18–19.) In any event, to the extent Insurers still

seek Category 6 discovery, it is not stayed.

## CONCLUSION

For the reasons explained above, McKesson's motion is GRANTED in part and DENIED in part. Discovery is stayed as to Categories 4-5, and as to further discovery and proceedings except for McKesson's pending motion for partial summary judgment on the duty to defend. (Dkt. No. 79.) Discovery is not stayed as to Categories 1-3 and 6.

On or before August 19, 2021, the parties shall file a stipulated briefing schedule for the motion for partial summary judgment. (*See* Dkt. No. 81.) Insurers' opposition shall be due 30 days after the deposition of McKesson's 30(b)(6) declarant in mid-September, assuming McKesson completes its obligations as to the discovery that is not stayed before the deposition. The hearing on the motion shall be no later than January 2022.

This Order disposes of Docket No. 93.

**IT IS SO ORDERED.**

Dated: August 12, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge