Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

| | | |
|---|---|---|
| AIU INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. C 20-07469 JSC |
| | ) | |
| McKESSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| ACE PROPERTY AND CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. C 20-09356 JSC |
| | ) | |
| McKESSON CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

San Francisco, California
Thursday, August 12, 2021

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff AIU Insurance Company:
                    WILLKIE FARR & GALLAGHER LLP
                    787 Seventh Avenue
                    New York, New York 10019-6099
           BY:  **CHRISTOPHER J. ST. JEANOS**
                **JOCELYN M. SHER**
                **ATTORNEYS AT LAW**

                **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported Remotely By:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
                       CSR No. 7445, Official U.S. Reporter

```
 1   APPEARANCES VIA ZOOM:   (CONTINUED)

 2   For Plaintiff Ace Property and Casualty:
                         HOLWELL SHUSTER & GOLDBERG LLP
 3                       425 Lexington Avenue, 14th Floor
                         New York, New York 10017
 4              BY:  MICHAEL S. SHUSTER, ATTORNEY AT LAW
                     DANIEL M. SULLIVAN, ATTORNEY AT LAW
 5                   DANIEL M. HOROWITZ, ATTORNEY AT LAW
                     BLAIR E. KAMINSKY, ATTORNEY AT LAW
 6

 7                       CLYDE & CO. US LLP
                         355 South Grand Avenue, Suite 1400
 8                       Los Angeles, California 90071
                BY:  SUSAN R.K. SULLIVAN, ATTORNEY AT LAW
 9

10                       LONDON FISCHER
                         2505 McCabe Way, Suite 100
11                       Irvine, California 92614
                BY:  RICHARD S. ENDRES, ATTORNEY AT LAW
12

13

14   For Defendant McKesson Corporation:
                         COVINGTON & BURLING LLP
15                       Salesforce Tower
                         415 Mission Street, Suite 5400
16                       San Francisco, California 94105-2533
                BY:  GRETCHEN A. HOFF VARNER, ATTORNEY AT LAW
17

18                       COVINGTON & BURLING LLP
                         The New York Times Building
19                       620 Eighth Avenue
                         New York, New York 10018-1405
20              BY:  CLÉA P.M. LIQUARD, ATTORNEY AT LAW
                     DAVID A. LUTTINGER JR., ATTORNEY AT LAW
21

22                       COVINGTON & BURLING LLP
                         One City Center
23                       850 Tenth Street, NW
                         Washington, D.C. 20001-4956
24              BY:  ANNA P. ENGH, ATTORNEY AT LAW
                     SHANNON R. TUCKER, ATTORNEY AT LAW
25
```

**Thursday - August 12, 2021**                              **9:01 a.m.**

**P R O C E E D I N G S**

---o0o---

**THE CLERK:** Calling Civil Action C 20-7469, AIU Insurance versus McKesson, and Civil Action C 20-9356, ACE Property versus McKesson.

Counsel, you don't need to state your appearances, but please state your name each and every time before you speak so the reporter knows who's speaking.

Thank you.

**THE COURT:** All right.  Good morning.

We're here on McKesson's motion to stay.  Let me sort of tell you how I analyze it, the way I'm looking at it, which is, I think there's agreement that we should stay as to the indemnity action.  There's no disagreement there.

And the question -- and we could stay as to the duty to defend.  The insurers are happy to do that.  But McKesson has filed a motion for summary judgment or partial summary judgment that they want heard on the duty to defend.  So they're not seeking to stay that.

So the real issue on this motion is what discovery is relevant to the motion for partial summary judgment because, of course, I can't grant a stay if it would deprive the insurers of discovery to which they're entitled to defend that motion.

So I really see this motion as a discovery dispute more

 1    than anything.  So then the way to look at it -- and I guess

 2    the first sort of dispute is when or what the excess insurers

 3    would have to show to defeat the duty to defend.

 4         And I think -- well, McKesson seems to contend -- you can

 5    tell me, Ms. Hoff Varner, if this is true if you're arguing it,

 6    whoever is arguing it -- that it doesn't matter when the

 7    duty -- the excess carrier's duty to step up and pay arose

 8    because their position is, "What matters is the facts that we

 9    were aware of at the time the first policies were exhausted

10    and, therefore, our duty to defend would have kicked in.  And

11    we had in our possession certain documents.  We want to be able

12    to use those documents potentially to say that we had no duty

13    to defend."

14         And what I understand McKesson to say is, "No, you can't

15    use those because" -- I don't know.  So, there you go.

16         **MS. LIQUARD:**  Your Honor, this is Cléa Liquard of

17    Covington & Burling for McKesson, and I'm happy to address --

18         **THE COURT:**  Great.

19         **MS. LIQUARD:**  -- your question.

20         And thank you for teeing it up that way.

21         You're right about the dispute between the parties as to

22    when the extrinsic evidence may become relevant to assessing

23    the duty to defend.  I think that debate between the parties,

24    actually, is somewhat academic because, regardless --

25    McKesson's position -- and this is stated throughout the case

1    law.  Every case we've seen under California law says that the

2    duty to defend is assessed on a very narrow basis of the

3    complaint, the policy, and potentially undisputed evidence or

4    facts that were known to the insurer at the outset of the

5    underlying lawsuits.

6         Now, insurers contend that the date --

7         **THE COURT:**  Well, let me stop you there.

8         There's the rub.  At the outset of the underlying lawsuits

9    or, for excess insurers, at the time their duty arose.

10        **MS. LIQUARD:**  Correct.  And that's insurers' position, and

11   they've stated actually no case law to support that.

12        And my point is really, regardless of which one of those

13   points you accept as the correct sort of date to look at, it

14   doesn't matter for present purposes because all of the

15   materials that insurers are asking for was known to them after

16   both of those dates.

17        They don't dispute that the earliest point in time that

18   they had any of those materials was 2019.  That's well after

19   the retention was exhausted in 2018 when McKesson e-mailed

20   insurers and their counsel to say we've hit defense costs of

21   $25 million, which is five times the amount of the retention.

22   So at least by that point, they were certainly aware that the

23   retention had been more than eroded.

24        **THE COURT:**  Okay.

25        **MS. LIQUARD:**  The defense obligations were triggered.  It

1    was after then that, at the earliest, they had any of this

2    material in their possession.

3          And could I make one more point, Your Honor?

4          **THE COURT:**  Sure.

5          **MS. LIQUARD:**  You're focusing on the extrinsic evidence

6    and the relevance to the defense analysis, which is absolutely

7    correct.

8          I do want to point out that, as Your Honor stated at the

9    outset, we have a right to have our motion on the duty to

10   defend, our summary judgment motion heard under Rule 56(d).

11   Under that analysis, it's not a relevance analysis; it's

12   whether the non-movant can show for specific reasons that the

13   material they're seeking is essential to opposing the motion

14   for summary judgment.  And they haven't met that standard.  In

15   fact, it's --

16         **THE COURT:**  Well, we're not there yet.

17         **MS. LIQUARD:**  -- the opposite.

18         **THE COURT:**  We're not there yet.  What they did was they

19   preempted that, and probably smartly, because it changes the

20   burden.  Right?  Because, of course, under 56(d), one thing

21   the Court looks at is:  Was the party diligent or did they have

22   an opportunity to pursue that discovery?

23         Here, they're pursuing that discovery.  So I think we're

24   not at 56(d).  They didn't wait until their opposition was due.

25   They raised it earlier.  So I think it's actually more broad

1   than it would be under 56(d).

2        But let me hear who's going to argue for the insurers with

3   respect to the point that you didn't -- all these pleadings and

4   things that you have in your possession, and therefore had

5   knowledge of, you didn't get until after the retention was

6   exhausted.

7        **MR. SHUSTER:**  Your Honor, it's Michael Shuster.

8   Thank you.

9        So first, there are different categories of material that

10  we say we should be entitled to use.  There is the material

11  that is in our Categories 1 through 3, which is material that

12  McKesson provided to AIU subject to an NDA; and also, to my

13  client, ACE, more limited material was provided subject to a

14  more limited NDA.  So that's one category, and then -- broadly

15  speaking.

16       And then there is the deposition exhibits and transcripts

17  that -- in Categories -- what we call Categories 4 and 5, which

18  are from the underlying action which we obtained from the

19  public docket but which are redacted and which --

20       **THE COURT:**  Can I just stop you there?  Might as well cut

21  ahead.

22       If they're redacted, you're not aware of it; so they

23  cannot form the basis of facts that the insurers were aware of

24  that are undisputed and that demonstrate no potential for

25  coverage.  You don't know of them.

1      **MR. SHUSTER:**  Well, so I would respond to that in two

2   ways.

3      One, as a threshold matter, there's no reason we shouldn't

4   receive those materials.

5      **THE COURT:**  You mean the redacted?

6      **MR. SHUSTER:**  I'm sorry?

7      **THE COURT:**  You mean the materials that are redacted or

8   the unredacted?

9      **MR. SHUSTER:**  In unredacted form.  I mean, they argued --

10      **THE COURT:**  They're not relevant.

11      **MR. SHUSTER:**  Well, Your Honor, the question of what is

12   relevant and what is admissible and what extrinsic evidence is

13   admissible can't be decided now.  It has to be decided --

14      **THE COURT:**  No.  Give me a case that says the insurers can

15   rely on facts of which they had no knowledge at the time.

16      **MR. SHUSTER:**  Well, we are -- we are -- we have to have --

17   the question is:  When did we have to have the knowledge?  When

18   did our obligation arise?

19      **THE COURT:**  Yes.

20      **MR. SHUSTER:**  Right?  And we are excess insurers, and it

21   does matter.

22      And what we're relying upon -- Ms. Liquard says that we're

23   not citing a case.  It's the policy language.  It's the

24   contract between the parties that says that our obligation

25   kicks in when the retention is exhausted.  They didn't provide

1  evidence of that until the day before our first conference in

2  this case in May.

3       We were --

4       **THE COURT:**  Okay.  But they're accepting that argument,

5  and I'm accepting it.

6       **MR. SHUSTER:**  I don't think so.

7       **THE COURT:**  Well, I am for purposes of our hearing and,

8  actually, for --

9       **MR. SHUSTER:**  Okay.

10      **THE COURT:**  -- purposes of this motion.

11      I'm certainly not prepared to rule as a matter of law that

12  the insurer -- the excess insurers are bound by or limited by

13  whatever facts they knew at the time the underlying lawsuits

14  were filed.  Okay?

15      I'll accept your argument for purposes of this motion.

16  But I still don't see how, given it's a pretty heavy burden,

17  the facts are -- for extrinsic evidence, that the facts are

18  undisputed, the facts known to the insurer.  The information

19  wasn't known to the insurer if it was available on the public

20  docket but redacted.

21      **MR. ST. JEANOS:**  Your Honor --

22      If I could, Mr. Shuster.  I'm sorry.

23      It's Chris St. Jeanos from AIG.

24      Let me just give you one example of that.  And you may be

25  right on Categories 4 and 5.  And I think we had a different

1   goal in mind.

2        There's a 30(b)(6) witness of McKesson who testified about

3   the company's knowledge about the occurrence, this single

4   occurrence they say was in existence for 20 years, two decades,

5   and that's at issue in the underlying lawsuits.

6        And I'll get the pages wrong because I don't have them in

7   front of me, but the testimony on page 35, we believe, is --

8   was in our possession at the time we had to make the coverage

9   decision; and it goes directly to their assertion that the

10  affirmative defenses we raised, including prior knowledge,

11  don't work to establish there's no duty to defend.

12       Now, page 36, we don't have because it's been redacted.

13  Page 37, we have.

14       I agree with you, Your Honor, that what we knew and what

15  we relied on in our coverage determination was page 35 and 37.

16  We will present that to you, Your Honor, in opposition to

17  summary judgment.  They can argue if they think we shouldn't be

18  allowed to rely on it.  You, Your Honor, can decide if it makes

19  any difference even if we rely on it.

20       But it would be helpful to us to see page 36, to make sure

21  we're not presenting something to you that's out of context and

22  that they may not come back and say --

23       **THE COURT:**  No.  I actually think that'll confuse things.

24  That's going to muck things up, because the question is what

25  did the insurers know.  And so we need to limit the record to

1    what the insurers know.

2         But I am -- and, Ms. Liquard, I am prepared -- I don't see

3    why -- well, but then that doesn't -- so the insurers, I guess,

4    dispute -- and I don't think I can resolve it here.  They

5    dispute whether they had possession, I guess, of these

6    pleadings, Categories 1 through 3, at the time their duty

7    arose.

8         **MS. LIQUARD:**  Well, I heard what -- I heard Mr. Shuster

9    argue.  And what they've argued in their opposition to the

10   motion to stay is that they weren't in possession of specific

11   defense invoices until a few months ago.  But nothing in the

12   policy says that the defense obligation is triggered upon

13   receipt of a defense invoice.

14        I don't think it's credible for insurers to suggest that

15   they weren't fully aware that the retention had been eroded

16   when we told them in August 2018 that five times the amount of

17   the retention had been incurred.  This is one of the

18   largest-scale litigations the country has seen.  We were

19   many months into an MDL proceeding.  And several months later,

20   as insurers point out in their opposition papers, we made a

21   formal demand for defense.  So -- and that was all in 2018.

22   And, again, it's not disputed that the earliest any of this

23   material got into the possession of the insurers was 2019.

24        **THE COURT:**  No, I understand.

25        **MS. LIQUARD:**  So the notion --

1      **THE COURT:**  Why --

2      **MS. LIQUARD:**  The notion that --

3      **THE COURT:**  Why shouldn't I decide all that -- I'll have

4  to decide all that on the motion for partial summary judgment.

5  Right?  And I'll have to look at the evidence.  And I'll say:

6  Okay, no reasonable trier of fact could find that -- or every

7  reasonable trier of fact -- it's your motion.

8      **MS. LIQUARD:**  Right.  Right.

9      **THE COURT:**  I have to figure that out.

10     I think it's probably going to be -- have to be -- I don't

11 know -- every reasonable trier of fact would have to find that

12 at the latest, their duty arose at X point.

13     **MS. LIQUARD:**  Correct.

14     **THE COURT:**  And then, boom, I'll cut it off.

15     And then I'll have to look at the record and see what it

16 shows as to whether they possessed those documents at the time.

17     But what I don't understand, for Category 1 to 3, they

18 have them.

19     **MS. LIQUARD:**  Mm-hmm.

20     **THE COURT:**  There's nothing more McKesson needs to do.

21     I think it would make the record more complete.  I'll be

22 able to do something that answers all those questions.  They

23 have them.

24     Otherwise, actually, what we're talking about is really

25 dragging it out, because I'm going to have to first address

1    summary judgment just on when the duty arose.  You'll get my

2    order.  And then we'll go all the way and brief, then, the

3    second part -- right? -- which is, then, what facts did they

4    have and all that kind of stuff.  And I don't think you want to

5    do that.

6        So I think the easiest thing is to put it all together,

7    Categories 1 through 3, sign whatever you need to sign to allow

8    them to use it.  They have it.  That's it.  You just need to

9    sign something, as I understand it.

10        Now, 4 and 5 and, therefore --

11        **MS. LIQUARD:**  Your Honor, could I just respond to a couple

12    of those points?

13        It's a little bit of a misrepresentation on insurers' part

14    to suggest that it's just a push of a button or we just deem

15    these materials to be produced, because they've asked for not

16    just McKesson documents, but documents that are designated

17    confidential by other parties.  McKesson has confidentiality

18    obligations to those parties.  We would have to give notice,

19    get permission to have those produced.

20        So although we don't think they're relevant, I take your

21    point, Your Honor, that we'd like to move the duty to defend

22    forward as fast as possible.  And so if you're focusing on

23    Categories 1 through 3 and considering expediting the process,

24    we'd ask Your Honor to consider limiting that to documents that

25    McKesson had that are McKesson documents, in which we are

1    ourselves can say we deem to be produced, rather than other,

2    sort of, plaintiffs, you know, designated, you know,

3    confidentiality discovery responses, which we don't see as

4    relevant at all and it would delay things for us to have to get

5    permission to produce those.

6         THE COURT:  Well, I just don't know what's involved there.

7    I mean --

8         MR. SHUSTER:  So --

9         THE COURT:  -- they have them.

10        The insurers have them; so you got permission initially.

11   Right?

12        MS. LIQUARD:  Oh.  Well, the protective order entered in

13   the MDL allows the materials to be shared with insurers for the

14   purposes of that MDL.  It doesn't allow those materials to be

15   used that other parties have designated as protected in --

16   you know, by third parties outside of the MDL litigation.

17        THE COURT:  I understand.  But it's McKesson that brought

18   this motion.  So part of your argument on the motion to stay

19   is:  It's unfair; this is a two-front war.

20        I mean, you started the war, at least here.  Right?

21        MS. LIQUARD:  Well, we didn't start the coverage

22   litigation, of course.

23        THE COURT:  They're happy to stay it.  They're happy to

24   stay it if you want to not deal with the duty to defend.  It's

25   completely in -- as I understand it, it's completely in

```
 1    McKesson's hands.  So if McKesson decides that dealing with
 2    this coverage on the duty to defend and the underlying cases at
 3    the same time is too much, we'll stay it.
 4         But my understanding is McKesson wants to go forward.  So
 5    I'm not that sympathetic, what I'm saying, to the argument
 6    about the two-front war.
 7         I guess what I'm -- I'm just not -- I'm not -- I don't see
 8    that that burden is that great.  It's just a matter of
 9    confirming.  That's all.  And, again, the -- and it's not a
10    matter of expediting.  We'll go -- it's a matter of not
11    delaying, because, otherwise, the only path I see is to split
12    it up and adjudicate, first, the latest -- right?  I don't have
13    to decide definitively -- but the latest date in which a
14    reasonable trier of fact could find, I guess, that the duty
15    arose.
16         And then the second step would be, okay, all these facts
17    were disclosed after that date.  We're not going to consider
18    those on the motion for the duty to defend.
19         MR. SHUSTER:  Your Honor, may I address the point
20    Your Honor just made and clarify a couple of things, if I may?
21         THE COURT:  Yes.
22         MR. SHUSTER:  Thank you.
23         So a couple things on that.
24         First, on the materials, whether it's the Category 1
25    through 3 materials or the Category 4 and 5 materials, we can,
```

1    of course, meet and confer on that stuff and try to work

2    through it and see where we are.

3        We have -- we narrowed our requests after the last

4    conference we had, and we attempted to identify the materials

5    we thought we would need.  It was originally Categories 1

6    through 6; but 6, the parties are working on consensually.  So

7    Category 1 through 5 was a narrowing of what we thought we

8    would need to oppose the motion.

9        We've had -- we received, basically, a blanket rejection

10   on that.  We're certainly at least prepared to try to meet and

11   confer and see if -- you know, with guidance from the Court

12   that puts those materials in play, see whether we can work out

13   arrangements.

14       I would also note, in terms of the relevant date and

15   cutoff date, we have the -- the motion that McKesson has made

16   is directed to what it calls three exemplar lawsuits.  Leaving

17   aside whether we accept that these are exemplars, it's as to

18   three lawsuits and as to two policies:  the 0809 AIU policy

19   and the 201516 ACE policy.  The track -- so the three lawsuits

20   are two Track 1 suits that were file in late 2017, Summit and

21   Cuyahoga, and then an action brought by the Oklahoma Attorney

22   General in 2020.

23       We certainly had all the materials, or at least had access

24   to all of these materials as of the time of that.  So there

25   will be -- in fact, even within the confines of the motion,

1    there's going to be a couple of wrinkles as to when the dates

2    are; but I think -- and we'll have different arguments about

3    relevance and what extrinsic evidence we had and what extrinsic

4    evidence we can use, although it's our position -- as the Court

5    noted, it's at least our position that we're entitled to use

6    everything and that the relevant date or the so-called cutoff

7    date for what extrinsic evidence we can use is a contested

8    matter and something the Court is going to need complete

9    submissions on.

10        But coming so, with all that said, we have the Category 1

11   through 3 stuff.  And then the 4 and 5, we obtained that from

12   the public docket.  And it's true; there are redactions.  We --

13   you know, I would actually have used a different example than

14   the one my colleague, Mr. St. Jeanos, used, just in that we had

15   that and, even though it's redacted, we made judgments; we drew

16   inferences.  It's information that we had.  There may have been

17   some blacked-out pages, but I think it's cutting it pretty fine

18   to say, well, you know, you didn't have those pages for the

19   sake --

20        And whether or not we're allowed to use that stuff in

21   opposing the motion, the argument that McKesson has advanced

22   for denying us use of that stuff is prejudice.  And there is no

23   prejudice in us obtaining information that the plaintiffs in

24   the underlying action already have.

25        This is not the classic case.  McKesson says this is the

1  classic case where the insurers shouldn't be allowed to obtain

2  discovery.  Those cases all address scenarios where the

3  coverage action is way out ahead of the underlying action and

4  the concern is that the insurers will be creating a record that

5  the plaintiffs in the underlying action will then seek to

6  obtain and use.

7       We're in the opposite situation here.  They've created the

8  record.  All we want is to be able to look at the complete

9  record -- and not even the complete record.  We've winnowed it

10  down -- and then to see it in unredacted form.

11       So --

12       **THE COURT:**  No, I understand.  I'm not going to order it

13  because I think the prejudice is to me, quite honestly, in

14  trying to adjudicate this.

15       What the insurers must show is, rely on facts known to it

16  if you're going to rely on extrinsic evidence and if such facts

17  are undisputed and conclusively demonstrate that there was no

18  potential for coverage.

19       So to the extent you're relying on inferences, well, it

20  better be an undisputed and conclusively demonstrated

21  inference.

22       Now --

23       **MR. SHUSTER:**  Well --

24       **THE COURT:**  -- to the extent, of course, if McKesson then

25  tried to unredact the material to contradict your inference,

1  that would be a different matter.  They can't.  Right?  It's

2  going to remain redacted.  But I don't -- it's not relevant.

3  It's just not relevant.  You didn't have it in front of you.

4  You can't use it.  And I think it'll keep the record clean

5  there.  I agree there isn't that same prejudice in terms of the

6  underlying case isn't there, necessarily.

7        But, in any event, I'm not going to order it.

8        But 1 through 3, I'm prepared to order McKesson to do what

9  they need to do to get the permission --

10        **MR. SHUSTER:**  And just --

11        **THE COURT:**  -- for --

12        **MS. LIQUARD:**  Your Honor --

13        **THE COURT:**  -- the insurers to use --

14        **MR. SHUSTER:**  And just --

15        **THE COURT:**  -- the documents in their possession.

16        **MS. LIQUARD:**  Your Honor, to --

17        **MR. SHUSTER:**  Just to --

18        **MS. LIQUARD:**  Mr. Shuster, if I could, please.

19        **MR. SHUSTER:**  -- to be clear on one thing --

20        **THE COURT:**  Go ahead, Ms. Liquard.

21        **MS. LIQUARD:**  Your Honor, we're prepared to move forward

22  on that basis, and we'll do what we need to do to get the

23  confidentiality obligation sorted out.

24        And to move forward, we'd like to set a briefing schedule.

25  The parties have agreed on a deposition of the declarant who

1    supports our motion for summary judgment.  That deposition is

2    scheduled for September 14.  We think it's -- we're certainly

3    going to be able to provide -- deem the documents produced by

4    that point.  And we think it's suitable to set the opposition

5    date to our duty to defend motion for 21 or 30 days following

6    the deposition.

7         THE COURT:  All right.  Mr. Shuster?

8         MR. SHUSTER:  Well, I -- so I just -- we're talking about

9    a deposition in -- as I understand it, the status of the

10   parties' discussions on the deposition is that it would happen

11   somewhere in around mid-September.  And if that's --

12        MS. LIQUARD:  September 14 is the date that the parties

13   agreed.

14        MR. SHUSTER:  All right.  So if we can have, you know,

15   30 days from then, I think that's -- that's something we can

16   live with.

17        THE COURT:  Yeah.  Okay.  All right.  I'll issue an order,

18   and I'll tell the parties to submit a stip on the briefing

19   schedule with the insurers' opposition coming approximately

20   30 days after that deposition occurs, assuming, of course, that

21   they get all those documents -- the permissions for

22   Categories 1 through 3 prior to the deposition.

23        MR. SHUSTER:  And, Your Honor, if I might, just a couple

24   of -- so, two things.

25        One, on the Category 1 through 3 -- and I think this is

1   clear, and I don't think the Court's seeking to make a

2   distinction here -- technically, AIU is in possession of a

3   broader set of the 1 through 3 materials than -- than ACE is;

4   so -- and they're subject to a different NDA.  So I just wanted

5   to note that.

6        And, second, we will seek -- we may -- we may wish to

7   cross-move on the duty to defend.  So I -- or we may seek

8   permission, given the nature of the briefing, for a sur-reply.

9   So I just want to be up front about that and just note that.

10  So --

11       THE COURT:  That would probably be a better way of

12  proceeding, with a sur-reply, if you want -- I mean, if the --

13  if the -- yeah, okay.  But let's try to get it done so that we

14  have the hearing before the end of the year.

15       MS. LIQUARD:  Agreed, Your Honor.

16       THE COURT:  But don't give you guys -- don't make my time

17  too small.  Right?  So maybe try to have the briefing done by

18  mid-November, if possible, or before Thanksgiving.

19       MR. SHUSTER:  Okay.  We'll do our utmost but --

20       THE COURT:  If you can.  Think about it.  Or at least

21  maybe you should have the hearing in January, but no later than

22  that.

23       MR. SHUSTER:  Okay.  I think --

24       MR. ST. JEANOS:  Your Honor, on that -- this is

25  St. Jeanos -- the only point I'd make is the settlement, the

1    global settlement that's been reached by McKesson and other

2    distributors, I think the date by which they know if it blows

3    up or it gets locked in is maybe January 2nd or 3rd.

4          So to some extent, if McKesson believes, as it's asserted,

5    that there's prejudice to a ruling by you on some of the issues

6    we raised in defense, it could be that a ruling that --

7    regardless of when we have an argument, a ruling after that

8    date could be helpful, just because I think we'll know by then

9    that the vast majority of cases that McKesson faces are, in

10   fact, wrapped up.

11         **THE COURT:**  Yeah.  I mean, I'll just tell you, it's not

12   the prejudice argu- -- that prejudice argument that sways me,

13   in large part because it's McKesson that's bringing the motion.

14   The question is, are the documents relevant to your opposition

15   or are they not.

16         **MR. ST. JEANOS:**  Yep.

17         **THE COURT:**  Right?  I just think that's the pivotal

18   question.

19         And for the reasons I said, I think information of which

20   the insurers were not in possession of are not relevant, and it

21   would just confuse matters --

22         **MR. ST. JEANOS:**  Understood.

23         **THE COURT:**  -- to provide them at this time.

24         **MR. ST. JEANOS:**  Understood, Your Honor.

25         **THE COURT:**  But you have 56(d).  I don't know what it's

1  going to look like, the briefing, if there's -- you always have

2  that option.

3      Like your context argument, you have that option.  I don't

4  know if the argument is any good or not, but you always have

5  the option to make that argument in context.

6      **MR. ST. JEANOS:**  Understood, Your Honor.

7      And two points that I'll leave you with, Your Honor.  And

8  I apologize for this, but I don't want to leave them not said.

9      One is, don't forget that one of the exemplars is the

10  Oklahoma AG action.  They're seeking coverage, a coverage

11  ruling from you on that.  That was filed in 2020.

12      **THE COURT:**  Yes.

13      **MR. ST. JEANOS:**  So all of -- there's no dispute that we

14  had all of these materials certainly before coverage, potential

15  coverage for that action was triggered.

16      As to National Union, the policy that they've put at

17  issue, the 0809, the duty to defend arises when the underlying

18  retained limit -- slightly different than a retention -- is

19  exhausted.  That retained limit is a per occurrence retained

20  limit with no ad- -- no cap to it, and we do disagree with them

21  that this is a single occurrence.

22      **THE COURT:**  I understand.  That's all what I'm going to

23  be --

24      **MR. ST. JEANOS:**  All within the con- --

25      **THE COURT:**  Not today.  Not today.

1          **MR. ST. JEANOS:**  Exactly.

2          **THE COURT:**  My mind is blank as to that issue today.

3          **MR. ST. JEANOS:**  Excellent.

4          **THE COURT:**  Just so you know, it's not going to make

5     any --

6          **MR. ST. JEANOS:**  We will do our best --

7          **THE COURT:**  -- difference.

8          **MR. ST. JEANOS:**  -- to fill it.

9          **THE COURT:**  Yeah, it's empty today on to that.  All I'm

10    thinking about -- okay.

11         All right.  I'm going to issue an order.  And if something

12    does arise -- I don't think it will now.  Hopefully, this will

13    give some clarity and it can move forward -- just contact

14    Ms. Means.  We can set another status by video.  But hopefully,

15    it won't; and the next time I'll see you, we'll have a robust

16    hearing with lots of issues for me to needle through.

17         Great.

18         **MR. ST. JEANOS:**  Excellent, Your Honor.  Thank you very

19    much.

20         **THE COURT:**  Thank you.

21         **MS. LIQUARD:**  Thank you, Your Honor.

22         **MR. SHUSTER:**  Thank you, Your Honor.

23         **THE COURT:**  Bye-bye.

24                  (Proceedings adjourned at 9:31 a.m.)

25                            ---o0o---

1

2                          **CERTIFICATE OF REPORTER**

3              I certify that the foregoing is a correct transcript

4      from the record of proceedings in the above-entitled matter.

5

6      DATE:  Friday, August 13, 2021

7                          _Ana Dub_

8      _____

9          Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
                   Official United States Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25