GRETCHEN A. HOFF VARNER (Bar No. 284980)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
ghoffvarner@cov.com

ANNA ENGH (*pro hac vice*)
SHANNON TUCKER (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com; srtucker@cov.com

DAVID LUTTINGER (*pro hac vice*)
CLÉA P.M. LIQUARD (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant, Counterclaim Plaintiff, Third-Party Plaintiff, and Third Party Counterclaim Defendant McKesson Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO

| | |
|---|---|
| AIU INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>McKESSON CORPORATION f/k/a MCKESSON HBOC, INC., | Civil Case Nos.: 3:20-cv-07469-JSC;<br>3:20-cv-09356-JSC<br><br>**McKESSON'S RESPONSE TO ACE'S SUBMISSION REGARDING THE *RITE AID* DECISION**<br><br>Courtroom:  Courtroom E, 15th Fl.<br>Judge:  Honorable Jacqueline Scott Corley<br>Action Filed:  October 23, 2020 |

|   |
|---|
| Defendant, Counterclaim Plaintiff, Third Party Plaintiff, and Third Party Counterclaim Defendant, <br><br> v. <br><br> ACE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Third Party Defendant and Third Party Counterclaim Plaintiff. |

The Exemplar Suits allege "damages because of 'bodily injury'" under the Supreme Court of California's decision in *AIU*, which controls in this case. Under the rule established in *AIU*, when bodily injury is the "event precipitating th[e] legal action" against the insured, and the suit seeks "compensation" for "loss" suffered by the claimant, the suit alleges "damages because of" bodily injury. *See AIU Ins. Co. v. Super. Ct.*, 51 Cal.3d 807, 843, 828-29 (1990). Under that rule, coverage attaches "regardless of by whom" the bodily injury "is suffered," and regardless of the fact that the claimant is a government agency seeking compensation for so-called economic losses. *Id.* at 842-43, 833 & n.14.

In this case, the underlying allegations leave no doubt that the "event precipitating" the Exemplar Suits, *id.* at 843, is alleged bodily injuries (opioid addiction, overdoses, etc.) and that the governments seek compensation for their losses (costs spent to treat bodily injuries like naloxone, treatment beds, ambulances, etc.). Indeed, as this Court recognized, the Exemplar Suits assert claims for "treatment ... of the addicted people" and claim damages for the costs of "treatment centers" and other remedies that "are going to treat the bodily injury." 1/27/2022 Hr'g Tr. 59:12-14, 19-20. That point is well supported by the complaints, which are replete with allegations of thousands of specific bodily injuries, including: "2,114 overdoses" in 2016-17, Dkt. 79-14 ¶719; "2,174 [opioid-exposed] infants .. admitted to inpatient settings" in 2015, *id.* ¶742; "10,120 to 18,700 Cuyahoga residents … abusing or dependent upon opioids in 2015," Dkt. 79-12 ¶709; and deaths of "an average of 32 Oklahomans ... every month" between 2013 and 2017, Dkt. 79-16 ¶20. The complaints also seek compensation for money spent to remedy these bodily injuries, including costs for "emergency responses to overdoses, providing addiction treatment," Dkt. 79-14 ¶20, "treating opioid-addicted newborns in neonatal intensive care units," *id.*, "administer[ing] thousands of doses of naloxone," Dkt. 79-12 ¶739, "providing treatment beds," *id.* ¶734, and providing "ambulatory services, inpatient hospital services, and emergency department services, among others." Dkt. 79-16 ¶40.

ACE asks this Court to ignore these allegations and controlling precedent and instead adopt the out-of-state decision, *ACE American Insurance Co. v. Rite Aid Corp.*, 2022 WL 90652 (Del. Jan. 10, 2022), which is contrary to California law and cannot be squared with the allegations.

**I.      The *Rite Aid* Decision and ACE's Arguments Are Incompatible with California Law.**

*First*, invoking *Rite Aid*, ACE contends that the plaintiffs in the Track One suits "asserted injury

1

McKESSON'S RESPONSE TO ACE'S SUBMISSION REGARDING THE *RITE AID* DECISION,
Case Nos.: 3:20-cv-07469-JSC; 3:20-cv-09356-JSC

to themselves in the form of budgetary harm," or so-called "economic damages," and therefore did not seek damages "because of" bodily injury. Dkt. 133 at 1. As this Court readily and correctly observed, coverage cannot be foreclosed simply because a plaintiff demands economic damages, because "[e]verything's an economic injury in this [day]." 1/27/2022 Hr'g Tr. 59:23. In *AIU*, the Supreme Court of California also rejected this argument, explaining that a similarly-worded CGL policy covered a CERCLA suit against the insured, where the loss "at issue in the CERCLA response cost context *is the* [*government*] *agencies' out-of-pocket expenses* rather than any tangible harm to property." 51 Cal.3d at 833 n.14 (emphasis added). In other words: "[T]he basis of the claim is *harm done to the public fisc*." *Id.* at 829 (emphasis added). Accordingly, the Track One and Oklahoma AG suits may seek compensation for those governments' "out-of-pocket expenses," but that is immaterial under California law. *Id.* at 833 n.14.

**Second**, ACE asks this Court to adopt *Rite Aid*'s *sui generis* rule limiting coverage to only those instances where the underlying claims are "asserted by" "[t]hree classes of plaintiffs," *Rite Aid*, 2022 WL 90652, at *1, *6—a rule that this Court correctly observed "contradict[s] the *AIU* case in California." 1/27/2022 Hr'g Tr. 55:25-56:1. The *Rite Aid* court held that "damages for bodily injury are covered losses only when asserted by 1) the person injured, 2) a person recovering on behalf of the person injured, or 3) people or organizations that treated the person injured or deceased, who demonstrate the existence of and cause of the injuries." *Rite Aid*, 2022 WL 90652, at *6. The *Rite Aid* rule, and ACE's arguments, are not grounded in the plain language of the policy[1] and are foreclosed by *AIU*, which holds that the "damages because of" provisions in CGL policies "encompass damages because of property *damage in general*, *regardless of by whom it is suffered*." 51 Cal.3d at 843 (emphasis added). The Supreme Court explained that "the mere fact that the governments may seek reimbursement of response costs or injunctive relief *without themselves having suffered any tangible harm to a proprietary interest* does not exclude the recovery of" the governments' losses "from coverage under the 'damages' provision of CGL policies." *Id.* at 842 (emphasis added). Rather, "it is

---

[1] For that reason alone the *Rite Aid* decision is out of step with California law because it "violate[s] the fundamental principle that in interpreting … insurance contracts, courts are not to insert what has been omitted." *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal.4th 758, 764 (2001). *See also Rite Aid*, 2022 WL 90652, at *13 (Vaughn, J., dissenting) ("The policy does not contain such language.").

sufficient that the party have suffered some detriment, *purely regulatory though it may be*, that is compensable by an award from a responsible party." *Id.* at 832 (emphasis added). The Court added that, "[f]or similar reasons ... such recovery is 'because of' property damage." *Id.* at 842.

Recognizing this fundamental clash with California law, ACE contends it is not arguing that a government claimant must itself "suffer[] a bodily injury," Dkt. 133 at 4, and attempts to recast the *Rite Aid* decision as predicated not on the "identity of the plaintiff," but rather the "nature of the claim." *Id.* at 1. That misguided reading finds no support in the opinion itself, *see Rite Aid*, 2022 WL 90652, at *1, and in any event, ACE's pivot to the amorphous concept of the "nature of the claim" does not help its cause. As the Supreme Court of California admonished: "Predicating coverage upon an injured party's choice of remedy or the form of action sought is not the law of this state." *Vandenberg v. Super. Ct.*, 21 Cal.4th 815, 840 (1999) (citing *AIU*, 5 Cal.3d at 824-25). For the same reason, ACE's and *Rite Aid's* emphasis on the fact that the Track One plaintiffs supposedly "disclaimed" claims based on derivative recovery of others' rights is immaterial under California law because allowing coverage to hinge on the claimant's pleading decision would "permit the injured third party to determine insurance coverage." *Id.*

***Third***, similarly misguided is ACE's attempt to impose an ever-changing combination of extra-textual requirements that the alleged damages be "directly connected to" bodily injury, and/or the underlying plaintiffs "make claims for specific bodily injuries," and/or the underlying claims must depend on "proof of bodily injuries" or "prove the costs" of treatment. Dkt. 133 at 1, 2, 4. Whatever formulation ACE eventually lands on, the arguments fail under California law. None of ACE's coverage-limiting language is found in the polices, which alone defeats the arguments. *See supra* n.1. The arguments are also inconsistent with *AIU*, which held that, regardless of whether the government's motive was to protect the general health of residents near the contaminated sites, "the costs that result from" the government's suit against the insured are "'because of' property damage," because "the event precipitating the[] legal action" was property damage. *AIU*, 5 Cal.3d at 843. Nothing in that formulation requires a showing of a "direct" connection between the damages sought and the injury, or proving that the claims are for "specific" individual bodily injuries. And there is no genuine dispute that the "event precipitating" the Exemplar Suits against McKesson, *id.*, is addiction, overdose, death, and other opioid-related bodily injuries.

Even putting all that aside, the Exemplar Suits *do* allege "specific" bodily injuries as demonstrated by the allegations, including those quoted on page one above, at least some of which allegedly arise "directly" from injury to individuals. *See also* Dkt. 122 at 5-6 (State's damages are "not for a communal injury," but "for individual injuries sustained in providing medical treatment or preventative treatment to certain, though numerous, individuals") (quoting *Oklahoma v. Johnson & Johnson*, 2021 WL 5191372, at *6 (Okla. Nov. 9, 2021)); *id.* at 7 (some of the counties' damages arguably "arise directly out of the personal injury of citizens") (quoting *In re Nat'l Prescription Opiate Litig.*, 2018 WL 6628898, at *9 (N.D. Ohio Dec. 19, 2018)). Moreover, in a point overlooked by the *Rite Aid* court, the claims and defenses at issue in the Exemplar Suits undoubtedly involve whether plaintiffs can sufficiently prove the alleged bodily injury and the costs they incurred to provide treatment and other medical services to remedy opioid-related injuries. *Cf. Rite Aid*, 2022 WL 90652, at *15 n.38 (Vaughn, J., dissenting) ("it appears ... that the Counties' claims ... will involve proof of widespread bodily injury from opioid addiction to persons within their respective jurisdictions").

## II.    ACE Misconstrues its "Measure of Damages" Cases, Which Are Inapposite.

In a failed effort to harmonize *Rite Aid* with California law, ACE misreads three California cases that deny coverage where there was *no causal connection* between "property damage" and claimed damages.

In *Giddings*, the insureds were sued for "violations of federal banking law and federal and California securities laws," based on allegations that they defrauded shareholders and creditors. *Giddings v. Indus. Indem. Co.*, 112 Cal.App.3d 213, 216 (Ct. App. 1980). Unsurprisingly, the Court of Appeal held that there was no coverage under a policy covering damage to tangible property, explaining: "Nothing in the voluminous record suggests the [underlying] action was *in any way* concerned with recovery for physical damage to corporate property," and "[b]y *no stretch of the imagination* can the allegations of waste and misappropriation of corporate assets be transformed into allegations of physical damage to tangible property." *Id.* at 220 (emphasis added). That ruling has no application here.

In *Geddes* and *Hogan*, the Supreme Court determined at the *indemnity* stage that certain amounts awarded in the underlying case were not insured because they did not result from covered "property damage," while other amounts that did result from "property damage" were covered. In *Hogan*, for

4

McKESSON'S RESPONSE TO ACE'S SUBMISSION REGARDING THE *RITE AID* DECISION,
Case Nos.: 3:20-cv-07469-JSC; 3:20-cv-09356-JSC

example, the insured sold a defective saw that caused both covered "property damage" (damaged wood cut by the saw) and uncovered harms that were not "property damage" (inability to use a rented machine meant to be used with the defective saw). *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal.3d 553, 557 (1970). The amounts awarded for the damaged wood were insured, but amounts awarded for the rental were not because "the inability ... to use the rented machine *was not the result of injury to physical property*." *Id.* at 563 (emphasis added). In other words, the rental costs resulted from the defective saw, which was not "property damage,"[2] and had no causal connection to the damaged wood, the only "property damage" at issue. The same basic analysis was applied in *Geddes*, which involved defective doors. *See Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.*, 63 Cal.2d 602, 609 (1965). Notably, in both cases, the Supreme Court rejected the argument ACE advances here, that the form of the relief sought determines coverage, holding instead that wages, overhead, and other business expenses are not categorically excluded and may be covered if awarded as compensation for "property damage"—*i.e.*, when such damages "provide[] a measure of the dollar amount of injury to the tangible property involved." *Hogan*, 3 Cal.3d at 562; *accord Geddes*, 63 Cal.2d at 609. These cases further confirm that coverage is not predicated on the plaintiff's "choice of remedy," *Vandenberg*, 21 Cal.4th at 840, and that compensatory damages in any form are covered when they are "the result of" bodily injury. *Hogan*, 3 Cal.3d at 563.

      Here, there can be no dispute that the treatment and other medical costs the governments seek to recover are "the result of" addiction, overdose, and other forms of bodily injury. *Id*. Moreover, allocation of *indemnity* costs between covered and uncovered claims has no bearing on the *duty to defend* issues pending before this Court. At the duty to defend stage, Insurers can avoid coverage only by showing there is "*no conceivable theory*" under which *any* of the relief sought could be deemed damages because of bodily injury. *Montrose Chem. Corp v. Super. Ct.*, 6 Cal.4th 287, 300 (1993) (emphasis in original). Where—as is the case here—even *some* of the relief sought constitutes damages because of bodily injury, the insurer must defend the *entire* suit. *See Hogan*, 3 Cal.3d at 564 (insurer is "liable for the total amount of the [defense] fees despite the fact that some of the damages recovered in the action against the insured were outside the coverage of the policy").

---

[2] The defective saw was not itself "property damage" because, as is typical in a CGL policy, the policy excluded repair, replacement, and loss of use of defective products sold by the insured. *Id.* at 558.

DATED: February 10, 2022

Respectfully submitted,

COVINGTON & BURLING LLP

By: /s/ *Gretchen A. Hoff Varner*
Gretchen A. Hoff Varner

*Attorney for Defendant, Counterclaim Plaintiff, Third-Party Plaintiff, and Third Party Counterclaim Defendant McKesson Corporation*

6

McKESSON'S RESPONSE TO ACE'S SUBMISSION REGARDING THE *RITE AID* DECISION,
Case Nos.: 3:20-cv-07469-JSC; 3:20-cv-09356-JSC